Jeanetta Kay **SMITH**, Respondent,

v.

**NEW PLAZA PONTIAC CO.** and David **Exposito**, Appellants.

No. WD35054.

Missouri Court of Appeals, Western District.

Sept. 25, 1984.

John I. Moran, Kansas City, for appellants.

Roger W. Calton, Kansas City, for respondent.

Before KENNEDY, P.J., and NUGENT and BERREY, JJ.

BERREY, Judge.

Appellant, defendant in the original action, appeals from an order overruling his motion for judgment N.O.V., or in the alternative for a new trial. Judgment is affirmed.

On March 4, 1980, respondent, plaintiff above, purchased a 1979 Buick Riviera from appellant New Plaza Pontiac Company. Michael Riggins, a salesman for New Plaza Pontiac, negotiated and closed the sale with Kay Smith.

Riggins told Smith the car was a trade-in, that it was in good shape and had never been wrecked. Riggins disputes Smith and alleges he said the car was a repossessed vehicle from GMAC (General Motors Acceptance Corporation) and that so far as he knew it had not been involved in an accident. He admitted stating it was a good car.

New Plaza Pontiac received a "repo title" on March 5, 1980, and instead of endorsing this to Smith they applied for and received a new title in their name and endorsed the new title to Smith, effectively denying her the opportunity to learn at that juncture of the car's history. She received the title on March 18, 1980.

The problems Mrs. Smith encountered with her car are legion, but nevertheless bear exposure albeit briefly in chronological order of the major complaints.

In May, 1980, the car had a leaky transmission, the axle boot was split, the exhaust clamp was missing, the foot feed was sticking, and the door glass rattled.

On June 9, 1980, the front axle broke as respondent was headed to the intercity viaduct enroute home. She called appellant and they arranged for a tow to their shop. Respondent paid the tow. Six weeks later respondent got her car back.

The transmission was still leaking, so respondent took the car to Ed Hutton's Auto Service because she knew that he had experience working on Buicks. After putting the car on the rack, the mechanics discovered the car had previously been in a wreck. They informed respondent of this fact. This was the first time she heard the car had been wrecked.

On August 11, 1980, while on vacation in California the axle broke again. The respondent and her husband spent that night in Lompoc, California, and the next day had their car towed to a Buick dealer in Santa Maria, California. The tow was $90.00 and the lodging $41.04. In Santa Maria they spent $23.00 on August 12, for lodging at the Holiday Motel and $69.12 for two night's lodging at the Turtle Inn. They had a $68.74 expense for a rented car from Budget Rent-A-Car. In addition they paid

Town and Country Buick $52.80 for frame work and $25.00 insurance deductible. They got home from their trip and went to pick up the mail. The transmission failed to work properly and some axle bolts had come loose. The car had to be towed. At appellant's suggestion it was taken to Ken Lewis Buick for repairs and respondent paid the tow charges.

On February 10, 1981, the car acted up and appellant took it to Don Stein Buick and they replaced the left front axle and a control arm. The transmission needed repairs and respondent was referred to O'Neill Oldsmobile. Don Stein had the frame straightened before they put on the new axle. The charges were $285.42 for the frame work. Respondent also paid Don Stein $25.00 deductible on her MIC extended warranty. Apparently the work on the transmission was not completed and Don Stein sent respondent to Charlie Fisher Buick to have it finished. Fisher Buick did the work, charging $883.22 of which respondent paid the $25.00 deductible.

Following those repairs respondent began driving her husband's car and he drove hers.

Minor problems that were irritating in nature persisted. Screws continually come out of the door; car rides rough; the boots continue to give trouble; the window is still loose. The plaintiff would not let her son drive the car. "To me, it's dangerous."

Respondent instituted suit against appellant for damages for fraud and deceit and on May 5, 1983, a jury verdict was entered in favor of respondent, and against appellant, for actual damages of $400.00 and punitive damages of $80,000.00. Appellant timely moved for a new trial. The trial court entered an order of remittitur wherein the court would sustain appellant's motion for new trial on discretionary grounds unless respondent remitted $50,000.00 of the punitive damage award. Thereafter, respondent timely filed her remittitur. Appellant then filed his Notice of Appeal from the judgment of actual damages of $400.00 and punitive damages of $30,000.00.

New Plaza Pontiac assigns as error two points. First, the verdict directing Instruction No. 5 failed to hypothesize the required finding of agency and failed to define agency. The second allegation also relates to Instruction No. 5. Appellant claims that leaving out "and in so relying plaintiff was using ordinary care" constitutes error.

■ There is no doubt that Michael Riggins was an agent for New Plaza Pontiac. David Exposito testified that he was the president of New Plaza Pontiac, Mr. Riggins was employed by New Plaza Pontiac as a salesman, Riggins' job was selling cars and dealing with customers, and Riggins negotiated the sale of the car in question to Mrs. Smith.

Riggins made certain representations about the car. Despite appellant's protestation about Riggins' agency and the general denial of the agency contained in appellant's answer, the evidence at trial and the admissions refute this claim.

The pertinent admissions from plaintiff's first request for admissions are as follows:

8. On March 4, 1980, Michael Riggins was a used car salesman employed by New Plaza Pontiac Company. Admitted.

9. On March 4, 1980, Michael Riggins negotiated a sale of the 1979, Buick Riviera serial number, 4Z5739E123629 to Kay Smith. Admitted.

Appellant has challenged Instruction No. 5 because it fails to hypothesize the required finding of agency and an appropriate definition of agency.

They rely on *Peak v. W.T. Grant Co.*, 409 S.W.2d 58 (Mo.1966), which essentially held that the denial of agency in the answer created a contested issue in the case.

In the instant case, the appellant's answer contained a general denial of the agency of Riggins. However, there was ample evidence to establish the agency between Riggins and New Plaza Pontiac.

"The stage at which a fact material to a plaintiff's case may properly be considered as having become uncontroverted and undisputed depends upon the circumstances

in each case." *Young v. Frozen Foods Express, Inc.,* 444 S.W.2d 35, 39 (Mo.App. 1969).

As stated, the appellant admitted the agency in request for admissions and through the trial testimony of David Exposito, president of New Plaza Pontiac. In closing argument appellant conceded Riggins was a salesman for New Plaza Pontiac and sold Mrs. Smith the car. Appellant cannot now be heard to complain.

■ It is well settled in Missouri that a party may not conduct himself throughout the trial so as to leave the adversary with the understanding that a fact is not controverted and then take the position it has not been proved. *State v. Esselman,* 179 S.W.2d 749, 752 (Mo.App.1944).

■ Agency having been proved by the evidence of both parties, the trial court did not err in failing to hypothesize the agency or submit a definition of agency. Agency was not an issue; the submitted instruction was proper. (The appellant did not offer an instruction on this point). *Accord Bowers v. S–H–S Motor Sales Corporation,* 481 S.W.2d 584–589 (Mo.App.1972), *Baker v. St. Paul Fire and Marine Insurance Company,* 427 S.W.2d 281, 293 (Mo.App. 1968).

■ Furthermore, even if this court were to find error in failure to hypothesize the agency requirement, such error, in the context of this case, would not be prejudicial. "It is not enough to show erroneous deviation [from MAI instructions] unless prejudice also appears." *Hudson v. Carr,* 668 S.W.2d 68, 71 (Mo. banc 1984). It is readily apparent that Riggins was an acting agent of New Plaza; hypothesis would have been of no consequence. Point I is denied.

Appellant next contends that the court erred in failing to include in verdict directing Instruction No. 5 the phrase "and in so relying plaintiff was using ordinary care."

■ The respondent testified she and her husband looked over the car. They made comments about a burn hole in the seat and scratches on left front fender and trunk. When asked what was wrong with the car Riggins replied, "There's nothing wrong with it. I drove it myself last night.... it drives just as good or better than any Cadillac I ever sold." Riggins' response to inquiry about the car possibly having been wrecked was, "No, I told you this car is the same as brand new. It's under a new car warranty now and we'll see that you get an extended warranty." Mrs. Smith said she believed this and had no reason not to believe him. Mr. Smith started the car, looked under the hood, checked the stereo and windshield wipers and sat in the back seat. They did not drive the car prior to purchase. From the evidence ordinary care was not an issue.

The well-reasoned opinion in *Vinyard v. Herman,* 578 S.W.2d 938, 940–41 (Mo.App. 1979) reads:

■ In MAI 11.02 "negligence" is defined as "the failure to use that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances" and, compatible therewith, in MAI 11.05 "ordinary care" is said to be "that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances." Therefore, the definition of "negligence" is tantamount to defining lack of "ordinary care" and vice versa. The bracketed portion of paragraph Fifth of MAI 23.05 reading "[in so relying plaintiff (defendant herein) was using ordinary care, and]", supra, appears to go against the grain of the law. "Where the issue of fraud involves the element of the right to rely on the alleged fraud-feasor's representation, it is misleading to say the evidence must show fraud *plus* absence of negligence [or fraud plus the use of ordinary care]; and it is a misnomer to use the word 'negligence' in this connection, if it is understood as carrying its usual signification, because 'the law of fraud does not exact of the victim that degree of caution which some other hypothetically prudent person would have used, but only reasonable care in view of *his* situa-

tion.' " *Wood v. Robertson*, 245 S.W.2d 80, 84[3] (Mo.1952); *Tietjens v. General Motors Corporation*, 418 S.W.2d 75, 86 (Mo.1967); *Kestner v. Jakobe*, 446 S.W.2d 188, 195[7] (Mo.App.1969). But the apparent disparity which the writer gleans between the bracketed portions in paragraph Fifth of MAI 23.05 and the law just recast, need not be fathomed further. As the foregoing attests, we hold that under the circumstances herein the giving of the instruction was proper, that defendant had the right to rely and that the bracketed portion of paragraph Fifth was not required. Moreover, if there were facts which the plaintiff felt justified a more specific direction as to defendant's duty to use ordinary care before defendant relied on plaintiff's representations, plaintiff should have asked for such an instruction. "Nondirection in that respect was not error." *Monsanto Chemical Works v. American Zinc, Lead & Smelting Co.*, 253 S.W. 1006, 1010–1011[11] (Mo.1923); *Bowers v. S–H–S Motor Sales Corporation*, 481 S.W.2d 584, 589 (Mo.App.1972).

*Bower v. S–H–S Motor Sales Corporation, supra*, is a similar case to the case at bar. Positive statements were made about the car and there was no fact to put purchasor on inquiry of the fraud. The parties were in unequal position as to the facts which were particularly within the knowledge of the defendant. *See also Beshears v. S–H–S Motor Sales Corporation*, 433 S.W.2d 66 (Mo.App.1968).

The defendant-appellant herein did not ask for or submit an instruction. Plaintiff Instruction No. 5 was fair. It properly stated respondent's theory of fraud by encompassing the facts showing the reliance on the representations made; it did not reveal anything to demonstrate a lack of ordinary care in the face of the positive representation.

■ Under the facts of the case it was not necessary to submit "in so relying plaintiff was using ordinary care" as contained in MAI 23.05.

Courts of Missouri have long noted that:

The tendency of modern decisions is not to extend but to restrict the rule requiring diligence, and similar rules, such as *caveat emptor* and the rule granting immunity for dealer's talk, and to condemn the falsehood of the fraud feasor rather than the credulity of his victim.

*Monsanto Chemical Works v. American Zinc, Lead & Smelting Co., supra*, at 1009 citing 26 C.J. *Fraud and Deceit* p. 1144. *Accord Shechter v. Brewer*, 344 S.W.2d 784, 788 (Mo.App.1961) and *Barylski v. Andrews*, 439 S.W.2d 536, 539 (Mo.App.1969).

■ One has a duty to speak out when their superior knowledge was not within the fair and reasonable reach of the plaintiff. *Barlyski v. Andrews, supra*, at 539.

■ The respondent relied on appellant's misrepresentation that the car was a trade-in, a trade-down and nothing was wrong with it. This was a positive representation of fact on which the respondent was entitled to rely. Surely the purchaser of a car is not required to have the car placed on a lift to inspect for wreckage as a condition precedent to ordinary care.

The court in *Norris v. Jones*, 661 S.W.2d 63, 65 (Mo.App.1983) noted that "MAI 23.-05, note 3, verifies that the use of ordinary care by a plaintiff in a fraud case is not always an issue." Further, the court in *Norris, supra*, said, "A person may act upon a positive representation of fact, notwithstanding that means of knowledge are open to him, particularly where the facts may be assumed to be within the knowledge of the person who declares it." Point II is denied.

Judgment affirmed.

All concur.