ESTATE OF Max E. OVERBEY, Deceased, and Glenna J. Overbey, Appellants/Cross–Respondents,

v.

CHAD FRANKLIN NATIONAL AUTO SALES NORTH, LLC, Respondent,

and

Chad Franklin, Respondent/Cross–Appellant.

No. SC 91369.

Supreme Court of Missouri, En Banc.

Jan. 31, 2012.

Douglass F. Noland, Thomas K. Mendel, Noland Law Firm LLC, Liberty, for the Overbeys.

Patric S. Linden, Kevin D. Case, Case & Roberts PC, Kansas City, for Franklin.

LAURA DENVIR STITH, Judge.

Max and Glenna Overbey recovered judgments against Chad Franklin National Auto Sales North, LLC (National), and Chad Franklin for fraudulent representations in violation of the Missouri Merchandising Practices Act (MMPA) made in connection with National's sale of a vehicle to the Overbeys.[1] Mr. Franklin appeals the judgment, and the Overbeys appeal the trial court's reduction of the punitive damage award.

This Court rejects Mr. Franklin's claims that a submissible case was not made against him and that the trial court erred in reducing the $1 million punitive damage verdict against him to $500,000 rather than to a lesser amount in light of the fact that the jury awarded only $4,500 against him in actual damages. The award is fully supported by the evidence that he and National, which was wholly owned by him when the Overbeys purchased their SUV, committed fraud in falsely representing to the Overbeys (and making similar representations to others) that they would owe only $49 per month if they joined a membership program for $500, but in fact the contract they signed obligated them to pay more than $37,000 over six years.

This Court also affirms the trial court's reduction of the $1 million punitive damage verdict against Mr. Franklin to $500,000 as required by the statutory cap on punitive damages contained in section 510.265. As the legislature created the MMPA cause of action under which the Overbeys sued, it had a right to set limits on the substantive remedies permitted under that statute, including the limit of punitive damages that could be recovered, without violating the Overbeys' rights to trial by jury or the separation of powers doctrine. For the reasons set forth below, this Court also rejects the claim that the statutory cap violates their rights to due process and equal protection or Missouri's constitutional prohibition on special legislation. The judgment is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The evidence, taken in the light most favorable to the jury's verdict, shows that National ran a number of television commercials for a "payment-for-life membership plan" for purchasing a vehicle from it. One of those commercials, seen by the Overbeys and shown at the trial, stated:

> No matter how high car prices get in the future, you'll lock in your low monthly payment for the rest of your life. Here's how. Buy any pre-owned vehicle, at the end of one year bring it back and pick out another. You'll drive a different vehicle every single year forever ... your initial monthly payment will never change and you can cancel your membership whenever you want.

Chad Franklin himself did not appear personally in a commercial advertising National's payment-for-life membership plan, but he did appear in one or more advertisements for his other wholly owned dealership, Chad Franklin Suzuki, that offered a similar low "instant reverse payment program."

After seeing these commercials, the Overbeys went to the National dealership in North Kansas City and said they wanted to buy a vehicle under the payment-for-life membership plan. The Overbeys repeatedly sought and received assurances from the sales personnel at National that

1. §§ 407.010 to 407.1500 RSMo 2000. All statutory references are to RSMo 2000 except those pertaining to section 510.265, which are to RSMo Supp.2010.

they were being given the deal specified in National's commercials. On this basis, the Overbeys agreed to purchase an SUV pursuant to a contract that required them to pay a total of $37,191.28 over 71 months. But, they said, the salesperson at National told them that by paying $500 to join the payment-for-life membership plan, their actual monthly payment would only be $49. And, in fact, once the Overbeys signed the contract, National paid them $3,253 to cover the difference between the $49 per month the salesman said was all they had to pay and the $719.52 the contract said they were required to pay per month, so that they would be paying a net of $49 per month for six months.

When the Overbeys returned to National six months later to trade in the SUV for another vehicle, they were told that the salesperson who sold them the SUV no longer worked there and that no current employees were aware of any provision in the Overbeys' contract that allowed them to trade in the vehicle after six months. To the contrary, the dealership claimed, the Overbeys had bought the vehicle for $37,191.28 and were obligated to pay $719.52 a month for the 65 months remaining on the contract. Michael Overbey, Max and Glenna's grandson, who accompanied them to the dealership, testified that when the Overbeys demanded to speak to Mr. Franklin, the National salesperson purported to get Mr. Franklin on the telephone, after which the salesman said Mr. Franklin claimed he had no knowledge of any deal offered to the Overbeys. National continued to insist the Overbeys were obligated to pay the full contract amount.

The Overbeys filed suit claiming that National and Mr. Franklin made fraudulent misrepresentations regarding the sale of the vehicle in violation of the MMPA, introducing testimony about the commercials, their experience with the dealership, the experience of four other persons who said they similarly were misled, and evidence of some 35 complaints filed with the attorney general that caused him to seek an injunction against the continued operation of the program.

The jury found that both National and Mr. Franklin violated the MMPA. It awarded the Overbeys $76,000 in actual damages and $250,000 in punitive damages against National. The jury also awarded $4,500 in actual damages and $1 million in punitive damages against Mr. Franklin. The trial court overruled Mr. Franklin's motion for judgment notwithstanding the verdict, rejecting his claim that the Overbeys had failed to adequately connect him with National's fraudulent representations, and denied remittitur of the punitive damages as excessive. Mr. Franklin appeals these rulings.[2]

The trial court did, however, grant Mr. Franklin's motion to reduce the punitive damage award against him pursuant to the damages cap contained in section 510.265, which states in relevant part: "No award of punitive damages against any defendant shall exceed *the greater of* (1) Five hundred thousand dollars; or (2) Five times the net amount of the judgment awarded

---

**2.** National did not appeal the judgment against it, and the record does not reveal whether it has paid any part of that judgment. Mr. Franklin also claims on appeal that the trial court abused its discretion by awarding the Overbeys an arbitrary amount of attorney's fees. *To preserve an issue for appeal, it must be presented to the trial court. Vance* *Bros., Inc. v. Obermiller Const. Servs. Inc.*, 181 S.W.3d 562, 564 (Mo. banc 2006); *see also* Rule 78.07. Mr. Franklin did not contest the amount of attorney's fees awarded to the Overbeys until he filed a cross-appeal with this Court. As a result, any error in awarding attorney's fees was not preserved, and this Court will not address it further.

to the plaintiff against the defendant" (emphasis added).

In reducing the punitive damage award to $500,000 as required by section 510.265, the trial court rejected the Overbeys' claims that a cap on punitive damages violates their rights to trial by jury, due process and equal protection, violates the separation of powers doctrine, and constitutes the kind of special law prohibited by the Missouri Constitution. The Overbeys appeal these rulings.

Because the parties challenge the constitutional validity of a statute, this Court has exclusive jurisdiction over their appeals. Mo. Const. art. V, § 3.

## II. MR. FRANKLIN'S APPEAL

Mr. Franklin argues that the Overbeys failed to make a submissible case against him and that the reduced amount of punitive damages awarded was excessive.

### A. Plaintiffs Made a Submissible Case Against Mr. Franklin

A motion for judgment notwithstanding the verdict will be denied if the plaintiff made a submissible case. *Klotz v. St. Anthony's Med. Ctr.*, 311 S.W.3d 752, 769 (Mo. banc 2010). A case is submissible if "each and every fact essential to liability is predicated on legal and substantial evidence." *Id.* "The Court takes the evidence in the light most favorable to the verdict, giving the prevailing party all reasonable inferences from the verdict and disregarding the unfavorable evidence." *Hodges v. City of St. Louis*, 217 S.W.3d 278, 280 (Mo. banc 2007). "This Court will reverse the jury's verdict for insufficient evidence only where there is a complete absence of probative facts to support the jury's conclusion." *Klotz*, 311 S.W.3d at 769.

The Overbeys did not seek to hold Mr. Franklin liable for violating the MMPA under *respondeat superior* or by piercing the corporate veil but rather for his personal involvement in the fraud. To hold him liable under the MMPA, they needed to prove his employment "of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . ." § 407.020. A corporate officer may be held liable if it is "shown by evidence of probative force that he had actual or constructive knowledge of the actionable wrong and participated therein." *Wolfersberger v. Miller*, 327 Mo. 1150, 39 S.W.2d 758, 764–65 (1931).

Direct evidence of fraud rarely exists, "[b]ut fraud, like any other fact, may be established by circumstantial evidence." *Bank of New Cambria v. Briggs*, 361 Mo. 723, 236 S.W.2d 289, 291 (1951). This may include indirect evidence of knowledge of or involvement in the conduct, as well as evidence of "similar transactions in the course of a continuous, systematic course of dealing." *Blakeley v. Bradley*, 281 S.W.2d 835, 839 (Mo.1955); *see also Chesus v. Watts*, 967 S.W.2d 97, 113 (Mo.App.1998).

Mr. Franklin did not admit involvement in the fraud, but the Overbeys presented substantial circumstantial evidence supporting his involvement in the fraudulent conduct. First, they showed that National placed television commercials advertising the payment-for-life program, quoted earlier. They showed that he was the sole owner of National and of Chad Franklin Suzuki. They showed that Chad Franklin Suzuki made commercials offering a similar program and that Mr. Franklin personally appeared in at least one of these commercials. They played these commer-

cials—as well as commercials for National—for the jury. The jurors could see the similarity of the programs, they could see Mr. Franklin's personal involvement in the Suzuki program and they could see his relationship with both programs offered by his two wholly owned dealerships.

Moreover, the Overbeys presented evidence that Mr. Franklin was involved in National's sales process by showing that when they complained about the failure to honor the payment-for-life program, the salesperson called Mr. Franklin personally about how to proceed. While, as Mr. Franklin notes, he then and now denied any knowledge of the fraudulent promises made to the Overbeys, the jury was free to find this denial incredible in light of the use of his name in National's commercials advertising the payment-for-life program and in light of the other evidence noted above.

Further, the jury's finding that Mr. Franklin had personal knowledge of the fraudulent promises made to the Overbeys was supported by the testimony of four other persons who claimed they similarly were defrauded by National, as well as evidence that the Missouri attorney general received at least 35 complaints of analogous conduct in regard to the payment-for-life membership plan and similar payment plans and is seeking a civil injunction. This was not isolated conduct of a single errant salesperson.

The Overbeys made a submissible case against Mr. Franklin, and the trial court properly overruled his motion for judgment notwithstanding the verdict.

### B. Excessive Punitive Damage Award

This Court reviews constitutional challenges *de novo*. *Hodges*, 217 S.W.3d at 279. "A statute is presumed to be valid and will not be declared unconstitutional unless it clearly contravenes some constitutional provision." *Franklin Cnty. ex rel. Parks v. Franklin Cnty. Comm'n*, 269 S.W.3d 26, 29 (Mo. banc 2008). The challenger has the "burden of proving the [statute] clearly and undoubtedly violates the constitutional limitations." *Id.*

Here, Mr. Franklin contends that the entry of a $500,000 judgment for punitive damages violated his due process rights because this award is grossly excessive in light of the nature of his conduct, even though reduced from the $1 million jury verdict. The 14th Amendment to the United States Constitution prevents a state from depriving "any person of life, liberty, or property, without due process of law." Article I, section 10 of the Missouri Constitution is essentially identical, stating that "no person shall be deprived of life, liberty or property without due process of law." Mo. Const. art. I, § 10.

In *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), the Supreme Court held that due process "prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor" because "[t]o the extent an award is grossly excessive, it furthers no legitimate purpose and constitutes an arbitrary deprivation of property." *Id.*

In applying these principles to determine whether the award of punitive damages was excessive based on State Farm's improper refusal to settle or later pay a claim, the Supreme Court said it would consider: "(1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Id.* at 418, 123 S.Ct. 1513. Pursu-

ant to these principles, it said, "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Id.* at 425, 123 S.Ct. 1513. In the case before it, in particular, the Supreme Court found that the Utah Supreme Court had erred in approving a punitive damage award of $145 million, based on an actual damage award of $2.6 million, as the punitive damages had been based not on State Farm's conduct regarding the individual plaintiff but rather on its unrelated conduct toward its customers across the nation. *Id.* at 419–23, 123 S.Ct. 1513. "Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis." *Id.* at 423, 123 S.Ct. 1513.

 But due process does permit considering the wrongfulness of the conduct and whether it is part of a pattern and practice of misconduct. Accordingly, *State Farm* also held that far greater ratios may "comport with due process where 'a particularly egregious act has resulted in only a small amount of economic damages.'" *Id.* at 423, 123 S.Ct. 1513, quoting *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 582, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996).

 Ultimately, *State Farm* concluded, "[t]he precise award in any case … must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff." *Id.* at 425, 123 S.Ct. 1513, quoting *Gore,* 517 U.S. at 582, 116 S.Ct. 1589. In considering those circumstances, the most important factor is the degree of reprehensibility of the misconduct, including:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; *the conduct involved repeated actions or was an insolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.*

*Id.* at 419, 123 S.Ct. 1513 (emphasis added).

In *State Farm,* the Supreme Court found that the defendant's conduct was not very reprehensible, for it caused limited economic harm, did not threaten health or safety, there was "scant evidence of repeated misconduct," and unrelated conduct as to other insureds could not be considered. *Id.* at 419–23, 123 S.Ct. 1513.

By contrast, here, consideration of these factors supports the large ratio between actual and punitive damages. The actual damage award of $4,500 was small, in contrast to the large actual damage award in *State Farm* of $2.6 million, so that a single-digit ratio would be insufficient to punish and deter the defendant properly. *Id.* This reasoning is supported by the language of section 510.265 itself, in which the legislature provided that the ratio of punitive damages should not be more than five times actual damages in cases with damages of more than $100,000, but if the amount of actual damages was less than $100,000, then it authorized an award of up to $500,000 regardless of the size of the actual damage verdict. § 510.265.

While this statutory framework of course cannot permit a punitive damage award larger than due process would allow, it is an additional indication that, in the case of small awards, due process does not prevent large ratios if necessary, given particular facts, to impose punishment and deter future misconduct.

Here, while the harm caused was economic rather than a threat to health or

safety, the target was financially vulnerable, the misconduct was part of a plan or scheme through which at least 35 people have alleged they were injured, and the harm was the result of intentional malice, trickery or deceit. Unlike in *State Farm*, Mr. Franklin did not appear or testify at the trial or otherwise express remorse, nor did he make his victims whole, but instead he continued to deny his fault through his counsel, who appeared for him at trial. A jury would be within its discretion in determining that, in these circumstances, in which "a particularly egregious act has resulted in only a small amount of economic damages," the usual single-digit ratio may not be an appropriate measure of the limits of due process. *Id.* at 419, 123 S.Ct. 1513.

Other cases from Missouri and elsewhere have approved ratios of the size awarded here when the actual damage award was small and the conduct was egregious. *See, e.g., Smith v. New Plaza Pontiac Co.,* 677 S.W.2d 941 (Mo.App.1984) ($400 in actual and $30,000 in punitive damages, a 75–to–1 ratio, for making misrepresentations about the condition of a used car); *TXO Prod. Corp. v. Alliance Res. Corp.,* 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993) ($19,000 in actual damages and $10 million in punitive damages, a 526–to–1 ratio, for slander of title); *Kemp v. Am. Tel. & Tel. Co.,* 393 F.3d 1354 (11th Cir.2004) ($115 in compensatory damages and $250,000 in punitive damages, a 2,172–to–1 ratio, for fraudulent billing practices); *Parrott v. Carr Chevrolet, Inc.,* 331 Or. 537, 17 P.3d 473 (2001) ($11,496 in compensatory damages and $1 million in punitive damages, an 86–to–1 ratio, for misrepresentations related to the sale of a vehicle).

Here, as in these cases, this Court holds that, on these facts, the amount of punitive damages was reasonable and proportionate to the harm inflicted by Mr. Franklin and did not violate due process.

## III. THE OVERBEYS' APPEAL OF THE PUNITIVE DAMAGES CAP

Section 510.265 states:

1. No award of punitive damages against any defendant shall exceed *the greater of:*

 (1) *Five hundred thousand dollars;* or

 (2) Five times the net amount of the judgment awarded to the plaintiff against the defendant.

Such limitations shall not apply if the state of Missouri is the plaintiff requesting the award of punitive damages, or the defendant pleads guilty to or is convicted of a felony arising out of the acts or omissions pled by the plaintiff.

2. The provisions of this section shall not apply to civil actions brought under section 213.111 that allege a violation of section 213.040, 213.045, 213.050, or 213.070, to the extent that the alleged violation of section 213.070 relates to or involves a violation of section 213.040, 213.045, or 213.050, or subdivision (3) of section 213.070 as it relates to housing.

§ 510.265 (emphasis added).

The Overbeys claim that the trial court's application of the $500,000 punitive damages cap contained in section 510.265 violates the separation of powers doctrine, violates their right to jury trial, violates equal protection and due process principles, and constitutes a special law prohibited by the Missouri Constitution. As explained above, this Court reviews such constitutional challenges *de novo.*

### A. Right to Trial by Jury

■ The Seventh Amendment to the United States Constitution provides that "the right of trial by jury shall be preserved, and no fact tried by a jury, shall be

otherwise reexamined in any Court of the United States, than according to the rules of the common law." As this Court noted in *State ex rel. Diehl v. O'Malley*, 95 S.W.3d 82, 84 (Mo. banc 2003), while the Seventh Amendment does not apply to the states, article I, section 22(a) of the Missouri Constitution provides an even more emphatic guarantee of the right to jury trial by providing that "the right of trial by jury as heretofore enjoyed shall remain inviolate." *Id.* at 84–85. The use of the phrase "heretofore enjoyed" clarifies that the right to jury trial protected by article I, section 22(a) "is that which existed at common law before the adoption of the first constitution" in 1820. *Id.*

The issue in *Diehl* was whether a plaintiff who sued under the Missouri Human Rights Act, sections 213.010 to 213.137 (MHRA), had a right to a jury trial when the MHRA was silent about that issue. 95 S.W.3d at 84–85. While this Court reaffirmed that there is no right to jury trial for claims for injunctive or other equitable relief, it noted that Ms. Diehl sought damages, not injunctive relief. *Id.* at 85–86. Such a claim is one at law and is analogous to claims for damages under the common law at the time article I, section 22(a) of the Missouri Constitution was adopted. *Id.*

As such, *Diehl* noted that Ms. Diehl's action for damages sounded in tort and that she was entitled to a jury trial regarding these claims because under article I, section 22(a), "[t]he right to trial by jury, where it applies, is a constitutional right, [that] applies 'regardless of any statutory provision' and is 'beyond the reach of hostile litigation.'" *Id.* at 92, quoting *Lee v. Conran*, 213 Mo. 404, 111 S.W. 1151, 1153 (1908). Had Ms. Diehl brought her claim in federal court, she similarly would have been entitled to a jury trial under the Seventh Amendment because her claim is analogous to claims for which jury trials were allowed at the time the Seventh Amendment was adopted. *Id.* at 91.

In *Scott v. Blue Springs Ford Sales, Inc.*, 176 S.W.3d 140 (Mo. banc 2005), this Court made it clear that the right recognized in *Diehl* to have a jury determine damages is not limited to claims brought pursuant to the MHRA or only to actual damages. Both punitive and actual damages could be recovered in 1820, so if a statute, such as the MMPA, permits the recovery of punitive damages, then the plaintiff is entitled to have the jury determine her entitlement to them. *Id.* at 142.

■■■ In other words, the legislature has the authority to choose what remedies will be permitted under a statutorily created cause of action such as the MMPA or the MHRA. For example, when the legislature first enacted the MHRA, it did not allow for the recovery of damages by private parties but instead permitted only injunctive relief by the attorney general. *State ex rel. Martin–Erb v. Missouri Comm'n on Human Rights*, 77 S.W.3d 600, 606–607 (Mo. banc 2002). The legislature later amended the MHRA to permit recovery of damages by injured parties, thereby changing the substantive rights of plaintiffs under that statute. *Id.* Having provided that such damages were available, the legislature could not then take from a plaintiff the right to have them determined by a jury. *Scott* said that the defendant's argument to the contrary:

Confuses the judicial process by which claims are determined with the substance of the claims themselves. Though, in general, the legislature is free to establish the substance of a claim, as, for instance, to allow or disallow punitive damages, it is not free to establish a procedure for adjudicating that substantive claim if the procedure contravenes the constitution. In short,

a statute is not valid that provides for punitive damages but precludes a jury trial to determine those damages.

*Scott,* 176 S.W.3d at 142.

Applying these principles here, the Overbeys chose to bring a statutory claim under the MMPA rather than a common law fraud claim. The substance of their claim, therefore, must be determined by reference to the MMPA rather than by reference to the common law. *Scott* teaches that the legislature could not take from the Overbeys their right to have the jury rather than a judge determine whether they had met their burden of proof as to actual or punitive damages once the legislature had provided that plaintiffs are permitted to recover such damages under the MMPA. *Id.* But the legislature did not permit unlimited recovery of such damages under the MMPA or under any statute. It chose instead to enact section 510.265, which limits the substantive right of recovery of punitive damages to a maximum of $500,000 or five times actual damages, whichever is greater. *See* § 510.265.

 The legislature, in so doing, at least in regard to a statutorily created cause of action such as the MMPA, did not "intervene in the judicial process" or "establish a procedure for adjudicating a substantive claim" in the manner prohibited by *Scott* but rather limited "the substance of the claims themselves," *Scott,* 176 S.W.3d at 141–42, as it has a right to do in setting out the parameters of a statutory cause of action. Indeed, it could have precluded recovery of punitive damages altogether. For this reason, application of the limits in section 510.265 to the Overbeys' recovery of punitive damages under the MMPA does not violate their right to jury trial under article I, section 22(a) of the Missouri Constitution.[3]

This result is in accord with federal decisions addressing similar issues under the Seventh Amendment. For instance, *Madison v. IBP, Inc.,* 257 F.3d 780, 804 (8th Cir.2001), *vacated on other grounds,* 536 U.S. 919, 122 S.Ct. 2583, 153 L.Ed.2d 773 (2002), upheld a cap on punitive damages for suits brought under Title VII of the Civil Rights Act of 1964. In rejecting the plaintiff's claim that the cap violated her right to trial by jury, the court stated:

> Congress created the Title VII cause of action and has the power to set limits for recovery under it. The statute does not violate the Seventh Amendment because it does not impinge upon the jury's fact finding function. In applying a provision, a court does not 'reexamine' the jury's verdict or impose its own factual determination as to what a proper award might be. Rather, it implements

---

**3.** Section 510.265 purports to limit the amount of punitive damages available in all causes of action, including those brought under the common law. National argues this is within its power, analogizing to the United States Supreme Court's holding in *Cooper Indust., Inc. v. Leatherman Tool Grp., Inc.,* 532 U.S. 424, 437, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001). *Cooper* said that a court's remittitur of punitive damages to comply with due process did not violate the Seventh Amendment right to jury trial because "[a] jury's assessment of the extent of a plaintiff's injury is essentially a factual determination, whereas, its imposition of punitive damages is an expression of its moral condemnation." *Id.*

Therefore, unlike compensatory damages, "which present a question of historical or predictive fact, the level of punitive damages is not really a 'fact' 'tried' by the jury." *Id.* at 437, 121 S.Ct. 1678, quoting *Gasperini v. Ctr. for Humanities, Inc.* 518 U.S. 415, 459, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) (Scalia, J., dissenting). *Cooper* dealt with the reduction of punitive damages by a court rather than a legislatively imposed reduction in the form of a statutory cap. Whether its reasoning has any application to a legislative cap on punitive damages, and whether such a cap would be constitutional as applied to a common law cause of action, is not before this Court in this case.

the legislative policy decision by reducing the amount recoverable to that deemed to be a reasonable maximum by Congress.

*Id.* Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1200–04 (9th Cir.2002), cited *Madison* with approval and succinctly restated its reasoning: "what Congress can create, Congress can define. Title VII's damages cap ... does [not] offend the Seventh Amendment." *Hemmings,* 285 F.3d at 1200–04. This rationale applies here.[4]

### B. Separation of Powers

■ The Overbeys argue that even if the imposition of a substantive limit on the amount of punitive damages that may be recovered under the MMPA does not violate their right to jury trial under article I, section 22(a), it does violate the separation of powers doctrine set out in article II, section 1 of the Missouri Constitution, which states:

> The powers of government shall be divided into three distinct departments— the legislative, executive and judicial— each of which shall be confided to a separate magistracy, and *no person,* or collection of persons, charged with the exercise of powers properly belonging to one of those departments, *shall exercise any power properly belonging to either of the others,* except in the instances in this constitution expressly directed or permitted.

(emphasis added).

This Court has recognized that the separation of powers doctrine is fundamental to our democratic system because it "prevent[s] the abuses that flow from [the]

centralization [of] power." *State Tax Comm'n v. Admin. Hearing Comm'n,* 641 S.W.2d 69, 73–74 (Mo. banc 1982). For this reason, each branch of government "ought to be kept as separate from and independent from[ ] each other as the nature of free government will admit, or as is consistent with that chain of connection which binds the whole fabric of the Constitution in one indissoluble bond of union and amity." *Mo. Coal. for the Env't v. Joint Comm. on Admin. Rules,* 948 S.W.2d 125, 132–33 (Mo. banc 1997), quoting *Rhodes v. Bell,* 230 Mo. 138, 130 S.W. 465, 468 (1910) (citations omitted).

■ The Overbeys claim that section 510.265 violates the separation of powers doctrine by restraining the judiciary's power to grant remittitur of judgments. Section 510.265 does not affect a court's ability to impose remittitur. Remittitur allows a court to reduce the damages awarded to the plaintiff if, "after reviewing the evidence in support of the jury's verdict, the court finds that the jury's verdict is excessive because the amount of the verdict exceeds fair and reasonable compensation for plaintiff's injuries and damages." *Gomez v. Constr. Design Inc.,* 126 S.W.3d 366, 375 (Mo. banc 2004), quoting § 537.068. Here, the reduction is not based on a finding that the damages are excessive but rather on a legislatively created limitation on punitive damages. "When [the legislature] creates a statutory right, it clearly has the discretion, in defining that right, to create presumptions, or assign burdens of proof, or *prescribe remedies* .... Such provisions do, in a sense,

---

4. While this Court agrees with the statement in the dissent that a plaintiff under the MMPA is entitled to have a jury determine the amount of damages, for the reasons noted above the jury can do so only up to the substantive limit of recovery set out in the statutes themselves in a statutory cause of action such as this, for that sets the limits of the right, not merely the limits of recovery as might be the case in a common law action. That is why the federal courts, and this Court, hold that, in the case of a statutory cause of action, a cap on damages does not impact the right to jury trial.

ctaffect the exercise of judicial power, but they are incidental to [the legislature's] power to define the right that it has created." *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 83, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (emphasis added).[5] Section 510.265 does not violate the separation of powers doctrine.

### C. Exclusions from Punitive Damages Cap Do Not Violate Equal Protection

Section 510.265 provides that three types of claims are exempt from its cap on punitive damages: (1) claims brought by the State of Missouri; (2) claims in which the "defendant pleads guilty to or is convicted of a felony arising out of the acts or omissions pled by the plaintiff;" and (3) claims brought for housing discrimination under the MHRA. § 510.265.

The Overbeys claim that these three exemptions have no rational basis and that their presence violates the Overbeys' right to equal protection under both the Fourteenth Amendment and article I, section 2 of the Missouri Constitution. As the Overbeys recognize, these guarantees of equal protection do not mean that the legislature must make all laws equally applicable to all persons. Rather, "equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with

resulting disadvantage to various groups or persons." *Romer v. Evans*, 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). As a result, the state may treat individuals and groups differently as long as the disparate treatment is adequately justified. *Doe v. Phillips*, 194 S.W.3d 833, 845 (Mo. banc 2006).

When the law does not disadvantage a suspect class or affect a fundamental right, it "is properly analyzed under a rational basis test." *Id.* Under rational basis review, this Court will uphold a statute if it finds a "reasonably conceivable state of facts that ... provide a rational basis for the classification[s]." *Kansas City Premier Apartments, Inc. v. Mo. Real Estate Comm'n*, 344 S.W.3d 160, 170 (Mo. banc 2011), quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). Rational basis review is "highly deferential," and courts do not question "the wisdom, social desirability or economic policy underlying a statute." *Comm. for Ed. Equal. v. State*, 294 S.W.3d 477, 491 (Mo. banc 2009). "Instead, all that is required is that this Court find a plausible reason for the classification[s] in question." *Kansas City Premier Apartments*, 344 S.W.3d at 170.[6]

---

5. The Overbeys' reliance on *Best v. Taylor Machine Works*, 179 Ill.2d 367, 228 Ill.Dec. 636, 689 N.E.2d 1057, 1080–81 (1997), to support their contrary argument is unavailing. *Best* specifically dealt only with whether a legislative limitation on *compensatory* damages violated the separation of powers, as the purpose of compensatory damages is to make the plaintiff whole and it is a judicial function to determine whether specific circumstances justify a particular award. It did not hold that such a limit could not be placed on punitive damages in statutory causes of action, the only issue reached by this Court here. *Cf. Lebron v. Gottlieb Mem'l Hosp.*, 237 Ill.2d 217, 341 Ill.Dec. 381, 930 N.E.2d 895,

912 (2010), quoting *Smith v. Hill*, 12 Ill.2d 588, 147 N.E.2d 321, 327 (1958) (permitting a limit on punitive damages in circumstances not at issue here).

6. This Court rejects the Overbeys' alternative argument that the law should be subject to strict scrutiny even though they are not in a protected class on the ground that their right to trial by jury is a fundamental one and, therefore, that any burden on it must be subject to strict scrutiny. For the reasons already noted, this Court finds that the punitive damage limitation does not violate their right to jury trial, so this argument is inapplicable. *See also Fust v. Attorney Gen. for the State of*

A rational basis exists for each of the exceptions enacted by the legislature.

### 1. State plaintiff

██ The reason the State should not be subject to the cap is self-evident. It sues under the MMPA not for individual damages to itself but in its *parens patrie* role on behalf of its citizens. The legislature rationally could conclude that, because the State represents the interests of all citizens in seeking relief, an exemption from the punitive damages cap would help ensure that the State could obtain an award of sufficient size to punish and deter defendants for their conduct as to the many Missouri citizens the attorney general filed suit to protect. By contrast, the Overbeys are sue only on their own behalf and are not entitled to recover punitive damages based on alleged wrongs done to others. *See State Farm*, 538 U.S. at 419–23, 123 S.Ct. 1513; *Philip Morris USA v. Williams*, 549 U.S. 346, 356–57, 127 S.Ct. 1057, 166 L.Ed.2d 940 (2007).[7] Accordingly, the legislature had a rational basis for this exception.

### 2. Defendant convicted of a felony

██ Section 510.265 also exempts from the punitive damages cap cases in which the defendant "pleads guilty to or is convicted of a felony arising out of the acts or omissions pled by the plaintiff." § 510.265. Plaintiffs of course recognize that those whose conduct was sufficiently egregious to constitute a felony are especially culpable and that a higher punitive damage award may be justified. Their argument is that this exemption is too *narrow*, as there may be others who could have been convicted of a felony but simply were not prosecuted. Plaintiffs believe that Mr. Franklin's conduct could fall into that category and that there is no rational basis to differentiate among such defendants.

██ The legislature rationally could conclude that the state has limited resources and that prosecutors, therefore, will choose to bring felony charges in the most serious cases. While there may be some additional cases in which such charges could have been brought, relying on the choice of public authorities to bring charges and the finding of a jury beyond a reasonable doubt or the admission of a defendant in pleading guilty that the defendant, in fact, has committed the alleged egregious conduct is a rational basis on which the legislature could have chosen to categorize degrees of reprehensibility. The choice of the prosecutor to bring an action does not bar a plaintiff from coming

*Missouri*, 947 S.W.2d 424, 431 (Mo. banc 1997) (holding that requiring 50 percent of a punitive damage judgment to go to state "does not employ suspect classifications or impinge on fundamental rights . . .").

7. The Overbeys claim that, in bringing suit against Mr. Franklin pursuant to the MMPA, they were advancing the State's interest in protecting consumers, therefore were acting as "private attorney generals" and consequently should be allowed unlimited punitive damages under the "state of Missouri" exception to the punitive damages cap in section 510.265. The plain language of section 510.265, however, clearly limits the exception to cases in which "the state of Missouri is the plaintiff," and this Court will "look beyond the plain meaning of the statute only when the language is ambiguous or would lead to an absurd or illogical result." *Akins v. Dir. of Revenue*, 303 S.W.3d 563, 565 (Mo. banc 2010).

This Court also rejects the Overbeys' contention that it would further the MMPA's purpose of protecting consumers to allow the Overbeys to stand in the shoes of the State here. They are suing solely for their own injury and damages, not to vindicate the rights of others. Indeed, the State itself has brought a civil suit for injunctive relief against National and Mr. Franklin on behalf of other injured parties.

into court but merely determines which cases are so reprehensible that they may justify an award greater than that the legislators otherwise believe to be the limit available to comport with due process. The reprehensibility of the defendant's conduct is a key factor in determining the amount of punitive damages to which a plaintiff is entitled. *See State Farm*, 538 U.S. at 419, 123 S.Ct. 1513. The legislature rationally could conclude that civil suits based on felonious criminal conduct warrant an exemption from the punitive cap because of the exceptional reprehensibility of the defendant's conduct.

### 3. *Violations of MHRA bar on discrimination in housing against protected classes*

■■■ The final exception to the damages cap is for civil actions alleging violations of the MHRA provisions barring discrimination in selling, leasing, renting or lending based on "race, color, religion, national origin, sex, ancestry, age, … disability, or familial status" as it relates to fair housing. Our country has a long and unfortunate history of discrimination in housing. The legislature rationally could conclude that extra steps are necessary to eradicate such discrimination and to deter future misconduct when the victims fall into the traditionally suspect or vulnerable classes protected by the MHRA. *State Farm* and other cases recognize that additional punitive damages may comport with due process when conduct is directed at those who are particularly vulnerable and may have difficulty protecting themselves

and whose individual damages may be small. 538 U.S. at 419–22, 123 S.Ct. 1513. The legislature had a rational basis for exempting housing discrimination claims brought under the MMPA.[8]

### D. *Prohibition on Special Laws*

■■■ The Overbeys also claim that the existence of these three exemptions violates the prohibition against special laws contained in article III, section 40 of the Missouri Constitution, which states in relevant part: "[t]he general assembly shall not pass any local or special law … where a general law can be made applicable, and whether a general law could have been made applicable is a judicial question to be judicially determined without regard to any legislative assertion on that subject." Mo. Const. art. III § 40.

■■■■ "A law [that] includes less than all who are similarly situated is special, but a law is not special if it applies to all of a given class alike and the classification is made on a reasonable basis." *Ross v. Kansas City Gen. Hosp. and Med. Ctr.*, 608 S.W.2d 397, 400 (Mo. banc 1980). The applicable test for whether a statute is a special law because there is no reasonable basis for its classifications in this context is similar to the rational basis test used in equal protection analyses. *Jefferson Cnty. Fire Protection Dists. Ass'n v. Blunt*, 205 S.W.3d 866, 868 (Mo. banc 2006). "The burden is on the party challenging the constitutionality of the statute to show that the statutory classification is arbitrary and without a rational relationship to a legisla-

---

**8.** The Overbeys assert that other types of claims may involve gross misconduct that causes relatively small actual damages and that, therefore, there is no rational reason to exempt housing discrimination from the punitive damages cap but not other similar claims. The Overbeys argument fails because the United States Supreme Court long has held that "it is no requirement of equal protection that all evils of the same genus be [addressed] or none at all." *Railway Exp. Agency, Inc. v. New York*, 336 U.S. 106, 110, 69 S.Ct. 463, 93 L.Ed. 533 (1949). The simple fact that other types of claims also may involve particularly bad conduct and minimal actual damages does not render the legislature's creation of an exception for housing discrimination irrational.

tive purpose." *Id.* For the reasons stated earlier in rejecting the argument that these exemptions violate equal protection, this Court finds that they do not violate the special law prohibition.

### E. Due Process Property Rights

 Finally, the Overbeys claim that section 510.265 violates their due process rights by arbitrarily taking what they believe is their property right to the full $1 million in punitive damages the jury awarded them. The Overbeys' argument is based on the flawed premise that they had a property right in the full $1 million in punitive damages. As noted earlier, here the cause of action was statutory. The Overbeys' substantive right to recover under that statute was limited by section 510.275, both when they bought their SUV and at trial. They never had a right to recover more than the amount set out in the statute, so they had no property right that was limited or denied.[9]

## IV. CONCLUSION

For the reasons stated above the judgment is affirmed.

RUSSELL, BRECKENRIDGE, FISCHER and PRICE, JJ., concur.

TEITELMAN, C.J., dissents in separate opinion filed.

DRAPER, J., concurs in opinion of TEITELMAN, C.J.

---

9. The Overbeys also allege that the punitive damages cap violates the open courts provision contained in article I, section 14 of the Missouri Constitution, which states "the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice shall be administered without sale, denial or delay." As stated above, a

RICHARD B. TEITELMAN, Chief Justice, dissenting.

The principal opinion recognizes that the state constitutional right to a trial by jury applies to the Overbeys' claim for punitive damages under the Missouri Merchandising Practices Act. However, the principal opinion then holds the statutory cap on punitive damages does not violate the Overbeys' right to a jury trial because the legislature could have precluded recovery of punitive damages altogether. The "inviolate" state constitutional right to a trial by jury is not contingent on hypothetical legislative prerogative. Instead, the constitutional right to a trial by jury attaches to claims that actually are prosecuted under existing law. Having given the Overbeys the option to exercise their constitutional right to a jury trial, the legislature cannot limit that right statutorily. Therefore, I respectfully dissent from the principal opinion to the extent it holds that statutory limits on a jury's award of punitive damages do not violate the "inviolate" state constitutional right to a trial by jury.

Article I, section 22(a) is one of the fundamental guarantees of the Missouri Constitution, providing "the right of trial by jury as heretofore enjoyed shall remain inviolate...." The word "inviolate" has a simple definition. It means "free from change or blemish, pure or unbroken." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1190 (1993). This simple definition frames the issue. Does the right to a trial by jury "remain inviolate" when a statuto-

party must raise an issue in the trial court to preserve it for appeal. *See note 2; Vance Bros., Inc. v. Oberniiller Const. Servs. Inc.,* 181 S.W.3d 562, 564 (Mo. banc 2006). The Overbeys failed to raise this issue in the trial court, the issue was not preserved for appeal and this Court does not find that justice requires it to grant plain error review.

ry limit requires courts to reduce the jury's verdict?

The special constitutional significance of the jury's role in determining damages is reflected in the analytical basis for determining whether the right to trial by jury attaches. If the action is a civil action for damages, then the right to a jury trial attaches and must "remain inviolate." *State ex rel. Diehl v. O'Malley*, 95 S.W.3d 82, 84 (Mo. banc 2003). Because the constitutional right to a civil jury trial is contingent on there being an action for damages, statutory limits on those damages directly curtails one of the most significant constitutional roles performed by the jury. Under these circumstances, the right to trial by jury does not "remain inviolate." It plainly and clearly is violated.

As the principal opinion acknowledges, this Court held that plaintiffs have a constitutional right to have a jury determine both punitive and actual damages in a statutory cause of action such as the Missouri Human Rights Act or the MMPA. *See Scott v. Blue Springs Ford Sales, Inc.*, 176 S.W.3d 140, 142 (Mo. banc 2005). Whether an action is based on the common law or a statutory cause of action, the jury's role in a civil case is to determine the facts relating to both liability and damages and to enter a verdict accordingly. These functions are what must "remain inviolate" under article I, section 22(a). Once the right to a trial by jury attaches, as it does in this case, the plaintiff has the full benefit of that right free from the reach of hostile legislation. While it is true that the legislature could decline to provide for punitive damages under the MMPA, the legislature instead chose to allow punitive damages. Having provided the right to pursue punitive damages, the legislature also invoked the attendant constitutional guarantee of a trial by jury. That right cannot be curtailed by statute.

The analytical framework established by the principal opinion leaves the legislature free to limit punitive damages at $1 in even the most egregious cases. Although the plaintiff still would receive the benefit of the jury's factual findings regarding actual damages and the reprehensibility of the defendant's conduct, the benefit would be hollow from both a practical and constitutional perspective.

Practically, the purpose of punitive damages is to punish civil wrongdoing and to serve as a deterrent to others who may be tempted to engage in similar conduct. Arbitrarily limiting punitive damages without reference to the facts found by the jury or the limits of due process is inconsistent with the intended purpose of punitive damages.

Constitutionally, the "inviolate" right to trial by jury preserves the role of citizens in resolving disputes and provides the people with a voice in the application of the law to problems of the day. By setting substantive limits on recovery regardless of the evidence, statutes such as section 510.265, RSMo, unavoidably limit the constitutional role of the jury. As with any other fundamental constitutional right guaranteed in the bill of rights, the right to trial by jury applies "regardless of any statutory provision" and is "beyond the reach of hostile legislation." *Diehl*, 95 S.W.3d. at 92 (citations omitted). If legislative limits on this constitutional right are permitted in statutory causes of action, the right to trial by jury is defined not by the text and history of our constitution but instead by the whim of legislative prerogative.

Similarly, the scope of the state constitutional guarantee of a right to trial by jury is not informed by the federal courts' interpretation of the Seventh Amendment. The Seventh Amendment provides that "the right of trial by jury shall be pre-

served." Article I, section 22(a) does more than simply "preserve" the right to a trial by jury; it requires that the right "remain inviolate." The phrase "remain inviolate" is a "more emphatic statement of the right" than that provided by the Seventh Amendment. *Diehl*, 95 S.W.3d at 84. The textual differences require a different analysis. The fact that the federal constitution authorizes limits on the jury's constitutional role in awarding damages has limited relevance to the interpretation of Missouri's "more emphatic statement" of the right to trial by jury.

Section 510.265 directly limits the jury's constitutional role in determining and awarding damages. Consequently, I would hold that the limits on punitive damages imposed by section 510.265 violate article I, section 22(a) of the Missouri Constitution.