CITY OF JEFFERSON,
et al., Appellants,

v.

MISSOURI DEPARTMENT OF
NATURAL RESOURCES,
et al., Respondents.

No. 75742.

Supreme Court of Missouri,
En Banc.

Oct. 26, 1993.

Rehearing Denied Nov. 23, 1993.

Thomas W. Rynard, Terry C. Allen, Allen Garner, Darnell Pettengill, Jefferson City, for appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shelley A. Woods, Asst. Atty. Gen., Jefferson City, for respondents.

ROBERTSON, Judge.

In 1990, the General Assembly passed and the Governor approved Senate Bill 530 (S.B. 530), amending the State's solid waste management law, the relevant portions of which are codified as Sections 260.300, et seq., RSMo Supp.1992. Appellants challenge the validity of S.B. 530, claiming the legislation violates Article III, Section 39(10), Article VI, Sections 16, 19 and 19(a), and Article X, Sections 10(a) and 21 of the Missouri Constitution. Appellants Jefferson City and St. Joseph are constitutional charter cities. Appellant Eldon is a fourth class city. (Jefferson City, St. Joseph and Eldon are collectively called the "municipal appellants" where their claims are different from those advanced by the other appellants.) Appellant Buchanan County is a first class county. Appellant David E. Johnston is a resident of Jefferson City and a taxpayer. Respondents are the Department of Natural Resources and the State of Missouri.

Appellants and respondents filed cross motions for summary judgment in the trial court. The trial court sustained respondents' motion and entered judgment in respondents' favor on all five of appellants' counts. This appeal followed. We have jurisdiction. Mo. Const. art. V, § 3. The judgment of the trial court is affirmed in part and reversed in part. The cause is remanded for further proceedings consistent with this opinion.

## I.

Section 260.305.1 authorizes the creation of solid waste management districts within solid waste management regions and establishes

procedures to accomplish that end. Section 260.305.3 states that

a county or two or more counties within a region *may* form or join a [solid waste management] district.... A city located in more than one county *may* join a district which encompasses any one of the counties within which it is located....

[Emphasis added.]

Section 260.310.2 provides that a solid waste management district "*may* enter into a contract with any city or county within the district to provide all or part of the solid waste management services for the city or county." [Emphasis added.] If the district solid waste management plan includes a city or county and "the city or county has by contract given the district complete authority for managing the solid waste of the city or county," the city or county is not required to file its own solid waste management plan. *Id.* However, counties that choose not to be members of a solid waste management district and all cities with a population over 500 persons within the county are required to "submit a solid waste plan or revision to an existing plan to the department of natural resources within one hundred eighty days of a decision not to participate. The plan shall meet the requirements of section 260.220 and this section." Section 260.325.8.

## A.

Appellants contend initially that these statutes violate Article X, Section 21 of the Missouri Constitution. In relevant part, the constitution provides:

A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the General Assembly or any state agency of counties or other political subdivisions, unless a state appropriation is made and disbursed to pay the county or other political subdivision for any increased costs.

■ A legislative act violates Article X, Section 21, "if both (1) a new or increased activity or service is required of a political subdivision by the State and (2) the political subdivision experiences increased costs in performing that activity or service." *Miller v. Director of Revenue*, 719 S.W.2d 787, 788–9 (Mo. banc 1986).

Appellants' Article X, Section 21 argument proceeds along two fronts. First, the *municipal* appellants claim that S.B. 530 requires them to join in financing a solid waste management district if the county in which the city resides chooses to form or join a district. (This argument is unavailing to Buchanan County; Section 260.305.3 speaks to counties in permissive language—"[a] county ... may form or join a district." The statute thus does not require a county to form or join a district.) Second, *all* appellants claim that if the county does not join the district, each of them must nevertheless file a new solid waste management plan more extensive than that previously required by the law.

### 1.

■ The municipal appellants can find no express statutory language mandating their membership in a solid waste management district. In the face of statutory silence on this point, each argues that S.B. 530 inferentially requires a municipality to join the district if the county in which each resides chooses to become a member of a solid waste management district.

Appellants point to two sections of S.B. 530 in support of this conclusion. Section 260.-305.3 states that "[a] city located in more than one county may join a district which encompasses any one of the counties within which it is located." Appellants contend that this language implies that a city located in only one county must join a district if its county joins a district. Section 260.325.8 provides that "[a]ny county which withdraws from a district and all cities within the county with a population over five hundred shall submit a solid waste plan ... to the department of natural resources." Appellants argue that this section requires a city to withdraw from a district whenever the county in which it resides withdraws and, by inference, to mandate that a city join a district whenever its county joins a district.

The statutes in question are not clear. Indeed, the inferences appellants draw from the statutes are plausible. Yet, an equally

plausible reading of the statutes imposes no mandate on municipalities and renders the statute permissible on the question of municipal membership in a district. Section 260.-305.3 does not require a city to join any district; that statute's plain words merely authorize certain cities to choose between districts. The language of Section 260.325.8 requires cities and counties not in districts to file a solid waste management plan, no more.

"A statute is presumed constitutional and must not be held otherwise unless 'clearly and undoubtedly' contravening the constitution." *Winston v. Reorganized School District R–1 Lawrence County*, 636 S.W.2d 324, 327 (Mo. banc 1982), *quoting Prokopf v. Whaley*, 592 S.W.2d 819, 824 (Mo. banc 1980). Thus, where a statute is susceptible to more than one construction, this Court's obligation is to construe the statute in a manner consistent with the constitution. We do so now and adopt the permissive construction previously discussed. In so doing we hold that S.B. 530 does not mandate that any city within the state become a member of a solid waste management district. Rather, the statute is permissive and allows cities to join such districts if they choose to do so. The point is denied.

### 2.

All appellants argue that S.B. 530 mandates their filing a new solid waste management plan that conforms to Section 260.325. They further contend that the filing of this plan requires them to incur additional costs beyond what the law required prior to the effective date of Article X, Section 21.

■ Section 260.325.8 requires any county that is not a part of a solid waste management district and all cities with a population over 500 persons within that county to submit a solid waste plan or revise an existing plan within 180 days of a decision not to participate in a solid waste management district. The statute mandates that the plan meet the requirements of both Sections 260.-220 and 260.325.

Section 260.220 requires cities and counties to submit a solid waste management plan on or before January 1, 1976. The require-

ments of Section 260.220 predate the adoption of Article X, Section 21. In addition to the components of a Section 260.220 plan, Section 260.325.4 requires a solid waste management plan to address the separation of household waste, the reduction of solid waste placed in landfills and the preparation of a timetable for such reduction, procedures to minimize the introduction of small quantities of hazardous waste, and the establishment of educational programs.

No city with a population greater than 500 persons and no county can avoid the requirement of filing a new solid waste management plan. This is so whether the county or city becomes a part of a solid waste management district and joins the district's plan or chooses to eschew membership in a district and files its own plan. Thus, S.B. 530 mandates an increase in activity required of a political subdivision by the General Assembly.

■ The existence of the mandate meets the first part of the constitutional test. It does not automatically follow, however, that every mandated increase in activity results in an increase in costs to the political subdivision. To prevail in an Article X, Section 21 claim, appellants must also show that they encounter increased costs in meeting the mandate.

In this case, the appellants' cost evidence consists solely of cost estimates for the preparation of a solid waste management *district* plan. This evidence assumes that a city must join a district and participate financially in the writing of the *district's* plan. The evidence is thus not relevant to the question whether *the city* faces increased costs in updating its Section 260.220 plan to conform to the requirements of Section 220.325 if it is not a member of a district. This Court will not presume increased costs resulting from increased mandated activity. *Miller*, 719 S.W.2d at 789.

Respondents urge that the cost issue is irrelevant because the State has made provisions for defraying the costs incurred by political subdivisions in meeting the requirements of Section 260.325 through the grant program established in Section 260.335. The State argues that these state grants are intended to offset any increased costs a politi-

cal subdivision might incur in meeting the requirements of Section 260.325 and that this is sufficient to meet the requirements of Article X, Section 21.

 We assign words used in statutes their ordinary meaning absent legislative adoption of a specific meaning. *Wolff Shoe Co. v. Director of Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988). Senate Bill 530 does not define the noun "grant." As commonly understood, a "grant" is "something granted; esp: a gift (as of land or a sum of money)." Webster's Third New International Dictionary, 989 (1976). The statutory authority to award grants does not create a statutory obligation to reimburse all of a political subdivision's increased costs in meeting a mandate. Instead, the statute establishes no more than a beneficent intention to grant funds to political subdivisions experiencing increased costs in meeting the State's requirements.

The road to compliance with Article X, Section 21, cannot be paved with good intentions. Rather, the constitution requires that the legislature pass a specific appropriation to cover the costs of the increased activity it demands of a political subdivision. *Rolla 31 School District v. State*, 837 S.W.2d 1, 7 (Mo. banc 1992). A grant program fails to meet the mandate of the constitution to the legislature.

## B.

Summary judgment is appropriate only where there are no genuine issues of material fact remaining before the court. Here, the appellants have claimed that they face increased costs in meeting the mandate of Section 260.325 and that there is no State appropriation "made and disbursed to pay ... for any increased costs." Art. X, § 21. Respondents' summary judgment papers do not negate either element of appellants' constitutional claim. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 383 (Mo. banc 1993). The trial court erred in sustaining the State's motion for summary judgment. We reverse on this issue and remand for further proceedings.

## II.

### A.

Appellants next contend that Section 260.-305 violates Article VI, Section 16, because it limits the ability of counties and cities to join with other public entities in providing for solid waste management.

Article VI, Section 16, provides:

Any municipality or political subdivision of this state may contract and cooperate with other municipalities or political subdivisions thereof, or with the United States, for the planning, development, construction, acquisition, or operation of any public improvement or facility, or for a common service, *in the manner provided by law.*

[Emphasis added.]

Section 260.305.1 authorizes the creation of a solid waste management district "in each solid waste management region." Section 260.305.3 states that "[a] county or counties within a region may form or join a district."

Appellant Buchanan County argues that Article VI, Section 16, is a constitutional grant of power to political subdivisions that the legislature cannot render meaningless by statute. Buchanan County claims that it has the constitutional authority to cooperate with any political subdivision of the state it chooses without legislative interference. To reach this conclusion Buchanan County contends that the constitutional phrase "in the manner provided by law" limits the legislature to the establishment of procedures by which political subdivisions may enter cooperative agreements. This reading of the constitution prohibits the legislature from restricting the entities with whom a political subdivision may choose to cooperate.

The municipal appellants' argument is more limited and is stated in the negative. The cities claim that they should not be required to join with all of the municipalities within their district/region. Their brief states: "The City of Jefferson and the City of St. Joseph ... wish to join with some, but not all, of the entities within their region." Also implicit in the cities' argument is their claim that the constitution prohibits legisla-

tive restriction on the entities with whom a political subdivision may cooperate.

■ The first portion of the cities' argument is easy to dispose. We have already concluded that municipalities are not required to join any district under S.B. 530. To the extent that a municipality faced with the option to join a district finds it too distasteful to cooperate with another political subdivision in a district, it may simply choose to remain a nonmember.

■ The second portion of the cities' argument and Buchanan County's claim are equally unavailing. We do not read the constitutional phrase "in the manner provided by law" as narrowly as do appellants.

Unless otherwise defined in the text, words used in the constitution are given their plain and ordinary meaning. "Manner" means "kind, sort." Webster's Third New International Dictionary, 1376 (1976). Thus, the constitution means "of the kind (or sort) provided by law."

Here, the legislature has limited the kind of agreements into which political subdivisions may enter to dispose of solid wastes. When political subdivisions seek to cooperate in the disposal of solid waste, the kind of agreements for which the statutes provide is limited geographically. This legislative limitation does not offend the constitution.

**B.**

In their petition, appellants raise two additional constitutional challenges. First, they argue that the charge levied under Section 260.330.1 is a tax imposed for municipal, county or other corporate purposes in violation of Article X, Section 10(a) of the Missouri Constitution. Second, they urge that Section 260.330.1 violates Article III, Section 39(10) of the Constitution, which prohibits a sales or use tax on property of political subdivisions.

**1.**

■ Article X, Section 10(a) of the Missouri Constitution provides:

Except as provided in this Constitution, the general assembly shall not impose *tax-*

*es* upon counties or other political subdivisions or upon the inhabitants or property thereof for municipal, county or other corporate purposes.

[Emphasis added.] Section 260.330 requires that "each operator of a solid waste sanitary landfill shall collect a charge equal to one dollar and fifty cents per ton or its volumetric equivalent of solid waste accepted." This charge, less collection costs, is paid to the Department of Natural Resources for deposit into the solid waste management fund for distribution for the special purposes authorized in Section 260.335.

To prevail on their Article X, Section 10(a) claim, appellants must show that the charge collected under Section 260.330 is a tax, not a fee.

Taxes are "proportional contributions imposed by the state upon individuals for the support of government and for all public needs" [Citations omitted.] Taxes are not payments for a special privilege or a special service rendered. [Citations omitted]. Fees or charges prescribed by law to be paid by certain individuals to public officers for services rendered in connection with a specific purpose ordinarily are not taxes, [citations omitted], unless the object of the requirement is to raise revenue to be paid into the general fund of the government to defray customary governmental expenditures....

*Leggett v. Missouri State Life Insurance Co.,* 342 S.W.2d 833, 873 (Mo. banc 1960).

Although the *Leggett* definition is not an exact fit, it is nevertheless clear that the charge collected by the landfill operator is a fee, not a tax. The charge is collected for the privilege of disposing of solid waste. The amount collected does not go into the State's general revenue nor is it used to defray customary, i.e., general, governmental expenditures. The fee goes into a specific fund for specific purposes. We reject appellants' claim that the landfill fee imposed by Section 260.330 is a tax for purposes of Article X, Section 10(a).

**2.**

■ Appellants also argue that Section 260.330 violates Article III, Section 39(1), which provides:

The general assembly shall not have power:

&ast; &ast; &ast; &ast; &ast; &ast;

(10) To impose a use or sales tax upon the use, purchase or acquisition of property paid for out of the funds of any county or other political subdivision.

For the reasons already expressed, the fee collected by landfill operators is not a tax. The point is denied.

### C.

■ The Department of Natural Resources adopted final boundaries for solid waste management regions on June 30, 1991, Section 260.300.2, and thereafter interpreted S.B. 530 to limit the number of districts in each region to one. Appellants claim this interpretation is unlawful, relying on Section 260.305.3, which states:

A county or two or more counties within a region may form or join *a* district as provided herein. The governing body of any county, by adoption of an ordinance or order, may join *an* existing district or form *a* district if the county is located in a region which does not have an existing district. *The governing body of any two or more counties within the same region may join together to form a district by adoption of an ordinance or order....*

[Emphasis added.] We disagree.

First, the statute mentions the formation of but one district. A county or counties may form a district or may join a district. A county governing body may form a district "if the county is located in a region that does not have an existing district."

Second, Section 260.305.1 provides: "A solid waste management district may be created and incorporated in each solid waste management region." [Emphasis added.] Section 260.10.6 contains the identical phrase. Both statutes speak in the singular. Both statutes contemplate but one district in each region.

We believe appellants' interpretation of the statute is inconsistent with the language employed by the legislature. The point is denied.

### D.

■ Jefferson City and St. Joseph claim that S.B. 530 violates Article VI, Section 19(a). That constitutional provision grants constitutional charter cities

all powers which the general assembly of the state of Missouri has authority to confer upon any city, provided such powers are consistent with the constitution of this state and are not limited or denied either by the charter so adopted or by statute.

These cities contend that S.B. 530 creates another level of government and empowers it to limit or deny charter cities their constitutional authority.

This argument is without merit for at least two reasons. First, S.B. 530 does not require these cities to join a solid waste management district. There can be no deprivation of power when membership is optional.

Second, and far more compelling, Article VI, Section 19(a), resolves any conflict between a charter city's power and a state statute in favor of the statute. *Cape Motor Lodge v. City of Cape Girardeau*, 706 S.W.2d 208, 211 (Mo. banc 1986).

The point is denied.

### III.

We affirm the trial court's judgment in all respects save one. The trial court erred in sustaining respondents' summary judgment motion on the question whether appellants face increased costs in meeting the mandate of Section 260.325.8. On that issue the judgment of the trial court is reversed and the cause is remanded for further proceedings.

COVINGTON, C.J., BENTON, THOMAS, PRICE and LIMBAUGH, JJ., and PARRISH, Special Judge, concur.

HOLSTEIN, J., not sitting.