**CITY OF JEFFERSON,**
et al., Respondents,

v.

**MISSOURI DEPARTMENT OF
NATURAL RESOURCES,**
et al., Appellants.

No. 77779.

Supreme Court of Missouri,
En Banc.

Feb. 20, 1996.

Rehearing Denied March 26, 1996.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shelley Woods, Asst. Atty. Gen., Jefferson City, for appellants.

Thomas W. Rynard, Allen Garner, Jefferson City, for respondents.

BENTON, Judge.

The Department of Natural Resources (DNR) and the State of Missouri appeal a judgment invalidating parts of § 260.325 RSMo [1]—passed in Senate Bill 530 (1990)—for violating the Hancock Amendment, *Mo. Const. Art. X, § 21.* This Court has jurisdiction. *Mo. Const. Art. V, § 3.* Affirmed in part, reversed in part, and remanded.

1. Statutory citations are to RSMo 1994 as sup-

## I.

The relevant facts appear in the prior appeal, *City of Jefferson v. Missouri DNR,* 863 S.W.2d 844 (Mo. banc 1993) (*City of Jefferson I*). In *City of Jefferson I,* this Court described the § 260.325.8 mandate: counties, and cities with populations over 500, not members of a solid waste management district must submit a new or revised solid waste plan that complies with §§ 260.220 and 260.325. 863 S.W.2d at 848. This Court held that this mandate was a state-required increase of activity. *Id.* The case was remanded to determine whether the plaintiff local governments faced increased costs to meet the § 260.325.8 mandate. *Id.* at 851. After a bench trial, the circuit judge enjoined all future enforcement of §§ 260.325.4, –.5, & –.8, as well as the DNR requirement that solid waste plans be prepared in accordance with the "Model Plan Guidelines for Solid Waste Management."

## II.

■ Legislation transgresses the Hancock Amendment, Article X, § 21, if both "(1) a new or increased activity or service is required of a political subdivision by the State and (2) the political subdivision experiences increased costs in performing that activity or service." *Miller v. Director of Revenue,* 719 S.W.2d 787, 788–89 (Mo. banc 1986).

■ As found in *City of Jefferson I,* § 260.325 entails an increase of activity because every city over 500 and every county must file a new solid waste plan addressing additional issues: the separation of household waste; the reduction of solid waste placed in landfills, and a timetable for such reduction; minimization of small quantities of hazardous waste; and establishment of educational programs. *City of Jefferson I,* 863 S.W.2d at 848. Although the second touchstone for a violation of Article X, § 21—increased cost—demands only greater than a *de minimis* increase, that increase must be shown by specific evidence; increased costs are not presumed merely from a mandate of increased activity. *See Miller,* 719 S.W.2d at 789.

plemented by RSMo Supp.1995.

■ DNR alleges that there was insufficient evidence that the local governments would sustain increased costs in developing a solid waste plan. In reviewing a court-tried case, this Court will affirm the judgment unless there is no evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 31 (Mo. banc 1976).

At trial, Jefferson City and its taxpayer showed that prior to December 4, 1980, solid waste management plans were required by section 260.220 RSMo 1978. DNR's guidelines for these pre-S.B. 530 plans were approximately 6½ pages. Jefferson City filed waste management plans in 1976 and 1986, both approved by DNR. The 1986 plan consisted of 2½ pages of narrative, a half-page implementation timetable, and copies of the city's existing solid waste ordinance and franchise agreements. It was completed by one city employee, at minimal or no cost to the city. The 1976 plan was similar.

In contrast, the present list of requirements for a S.B. 530 plan runs 23 pages. The Model Plan Guidelines—DNR's instructions for composing a solid waste plan— exceeds 300 pages exclusive of appendices. A former DNR employee testified that while working for DNR, he advised communities that their costs would rise "two to three times" over what they then spent on solid waste plans.

According to the evidence, Jefferson City, as a city independent of a solid waste management district, would have to hire additional staff or consultants to update its plan. Two engineering firms submitted bids of $15,289 and $47,000 to prepare Jefferson City's plan, one of which projected up to 849 work hours. By the evidence, as much as 31 to 49 percent of these costs were newly required by S.B. 530.

DNR argues that the Guidelines do not compel expensive engineer-developed plans, but rather encourage cheaper, community-input-based plans. Even so, the increase in costs is more than *de minimis*, from the need to hire additional staff, and increased administrative costs. Further, S.B. 530 clearly contemplates that professional engineers may be engaged to prepare solid waste plans. § 260.325.1. As the circuit court found, engineering bids for solid waste plans are evidence of increased costs in complying with the new law.

■ True, nothing in § 260.325 mandates a Cadillac plan. However, even using the lower bid of $15,289, the increase in expense to Jefferson City is not *de minimis*. *See Miller*, 719 S.W.2d at 789. Therefore, Jefferson City need not comply with the mandate to submit a revised solid waste plan until the state actually reimburses the city for its increased costs. *See Fort Zumwalt School Dist. v. State*, 896 S.W.2d 918, 923 (Mo. banc 1995).

■ A recent amendment to § 260.325 does authorize the distribution of funds to cities, counties, and districts to implement the requirements of § 260.325. *See* § 260.325.9 (S.B. 60 & 112 (1995)). However, this amendment does not appropriate funds because it does not "specify the amount and purpose of the appropriation." *Mo. Const. Art. IV, § 23*. Until a specific appropriation is made and disbursed to Jefferson City, it need not comply with the planning mandate. *See Rolla 31 School Dist. v. State*, 837 S.W.2d 1, 7 (Mo. banc 1992).

### III.

The circuit court apparently enjoined all enforcement of most of § 260.325. However, there is no evidence that any political subdivision other than Jefferson City experienced increased costs in filing an updated solid waste plan. Only Jefferson City and Eldon presented evidence at trial; St. Joseph and Buchanan County did not appear; no other political subdivision is a party.

■ Eldon demonstrated no cost increase or, at most, a *de minimis* one. Eldon is a member of Solid Waste Management District T, which relied on a community advisory group rather than engineers. Eldon's participation in district planning was mostly limited to a single employee who attended monthly or bi-monthly meetings. District T received DNR grants totalling $45,000 for planning costs. Eldon presented no evi-

dence that the district (or its members) had costs exceeding the amount of the grants. Although the mere prospect of a "grant" to cover increased costs does not justify summary judgment for the state, *City of Jefferson I*, 863 S.W.2d at 849, actual receipt of grant funds defeats an Article X, § 21 violation, in the absence of evidence that the increased costs exceed the grant.

IV.

The circuit court also ruled that the costs of *implementing* the updated solid waste management plans, and *revising* the plans every two years as required by § 260.325.5, violated Article X, § 21. Once again, no plaintiff other than Jefferson City presented evidence on this issue.

DNR argues that much of Jefferson City's claimed implementation expense would actually result, not from the planning mandate, but from the city's choice to perform additional tasks at city expense. DNR also asserts that the circuit court was foreclosed from ruling on implementation and review costs by this Court's mandate in *City of Jefferson I* and the law of this case. Jefferson City, citing DNR's rhetoric in correspondence and the Model Plan, claims that the circuit court was within its mandate because implementation and review are part of planning.

■ These creative arguments need not be resolved now. With no updated plan yet filed and approved, it is impossible to ascertain whether Jefferson City will actually have increased implementation costs or to what extent those costs will result from an unfunded state mandate. Moreover, Jefferson City has no current obligation either to implement or review a S.B. 530 solid waste plan. In the absence of an updated plan, the circuit court's ruling on these issues was premature, as would be a decision by this Court.

V.

The finding of the circuit court that Jefferson City faces increased costs to develop an updated solid waste plan pursuant to § 260.325.8 is affirmed. The mandate that Jefferson City comply with § 260.325.8 is

suspended until the General Assembly actually appropriates funds to pay the city's increased planning costs. However, to the extent the circuit court's judgment purports to apply to political subdivisions other than Jefferson City, or to subjects other than the § 260.325.8 mandate, it is reversed. This case is remanded to the circuit court for entry of judgment consistent with this opinion.

PRICE, LIMBAUGH, ROBERTSON, COVINGTON and WHITE, JJ., and SMART, Special Judge, concur.

HOLSTEIN, C.J., not sitting.