SUPREME COURT OF MISSOURI
 en banc
CITY OF CRESTWOOD, et al., ) Opinion issued April 20, 2021
 )
 Appellants, )
 )
v. ) No. SC97653
 )
AFFTON FIRE PROTECTION )
DISTRICT, et al., )
 )
 Respondents. )

 APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
 The Honorable Jon E. Beetem, Judge

 The city of Crestwood and two of its resident-taxpayers, Gregg Roby and Stefani

Hoeing (collectively, “plaintiffs”), appeal the circuit court’s judgment on the pleadings in

favor of the Affton Fire Protection District, the governor, and the attorney general

(collectively, “defendants”). 1 The plaintiffs claim the circuit court erred in entering judgment

on the pleadings because sections 72.418.2 and 321.322.3, 2 which govern the provision of

and payment for fire protection services in certain annexed areas, violate the prohibition

[against special laws] in article III, section 40 of the Missouri Constitution. The plaintiffs

1
 At the time the petition was filed in 2017, the governor of Missouri was Eric Greitens and
the attorney general of Missouri was Joshua Hawley. Neither individual remains in office,
so, by operation of Rule 52.13(d), their successors, Governor Michael Parson and Attorney
General Eric Schmitt, have been substituted as defendants.
2
 All statutory references and citations are to RSMo 2016, unless otherwise noted.
also claim section 72.418.2 violates the due process clauses of the Missouri and United States

constitutions as well as article X, sections 11(b), 16, 21, and 22 of the Missouri Constitution

prohibiting certain taxes and the creation of unfunded mandates.

 Because a rational basis supports the classification scheme challenged by the plaintiffs

with respect to sections 72.418 and 321.322.3, their special-law challenges fail. As for the

plaintiffs’ remaining claims, section 72.418.2 does not impose a tax on Crestwood residents,

offend due process, or create an unfunded mandate. The circuit court’s judgment is affirmed.

 Factual and Procedural Background

 Crestwood is a constitutional charter city located entirely within St. Louis County. The

Affton Fire Protection District provides fire protection services to an unincorporated portion

of St. Louis County that lies adjacent to Crestwood. In 1997, Crestwood annexed a portion

of the unincorporated area within the Affton Fire Protection District.

 In first-class counties with a charter form of government and more than 900,000

inhabitants, the requirements for fire protection districts and annexing cities upon the

annexation of previously unincorporated areas are governed by section 72.418.2.

Sections 321.322.3, 72.418.2. Pursuant to section 72.418.2, the district must continue to

provide fire protection services and emergency medical services to the annexed area but no

longer can levy taxes on property in the annexed area, except for bonded indebtedness that

existed before the annexation. Instead, the district taxes property within its territorial limits

that lies outside the annexed area, and that tax rate determines the amount of the fee

Crestwood pays to the district. Id. Crestwood must pay to the district an amount equal to

what the district would have levied on the taxable property within the annexed area had

 2
annexation not occurred. Id. In other words, following Crestwood’s annexation of the

previously unincorporated area, Crestwood now pays to the district what the district would

have collected in tax revenue within the annexed area. Id.

 In 2017, the plaintiffs filed a petition for declaratory judgment against the defendants.

In their amended petition, the plaintiffs seek a declaration that sections 72.418.2 and

321.322.3 are constitutionally invalid special laws. They seek a further declaration that

section 72.418.2 violates article X, section 11(b) (limit on the tax rate for political

subdivisions); article X, sections 16, 21, and 22 of the Missouri Constitution (provisions of

the “Hancock Amendment” prohibiting certain tax increases and unfunded mandates); and

the due process clause of both the Missouri and United States constitutions.

 The plaintiffs filed a motion for summary judgment, and the defendants filed a motion

for judgment on the pleadings. In their motion, the defendants contended sections 72.418 and

321.322 are not special laws and section 72.418.2 is otherwise constitutionally valid. The

circuit court granted judgment on the pleadings in the defendants’ favor, finding the

challenged statutes were not special laws because the statutes distinguished between counties

based on open-ended characteristics. On the plaintiffs’ other claims, the circuit court found

section 72.418.2 constitutionally valid because it does not impose a tax or require a city to

undertake new or increased levels of activity. The circuit court then overruled, as moot, the

plaintiffs’ motion for summary judgment.

 The plaintiffs appealed to this Court, which has exclusive jurisdiction over an appeal

challenging the constitutional validity of a statute. Mo. Const. art. V, sec. 3.

 3
 Standard of Review

 This appeal arises from the circuit court’s grant of judgment on the pleadings in favor

of the defendants. “This Court reviews a circuit court’s ruling on a motion for judgment on

the pleadings de novo.” Woods v. Mo. Dep’t of Corr., 595 S.W.3d 504, 505 (Mo. banc 2020).

In reviewing a grant of judgment on the pleadings, the Court must decide “whether the moving

party is entitled to judgment as a matter of law on the face of the pleadings.” Emerson Elec.

Co. v. Marsh & McLennan Cos., 362 S.W.3d 7, 12 (Mo. banc 2012) (internal quotation

omitted). The circuit court’s judgment “will be affirmed if the facts pleaded by the plaintiffs,

considered by the court as admitted, demonstrate that they could not prevail under any legal

theory.” Boland v. Saint Luke’s Health Sys., Inc., 471 S.W.3d 703, 707 (Mo. banc 2015).

 In reviewing a circuit court’s ruling on a motion for judgment on the pleadings, “[t]his

Court will not ‘blindly accept the legal conclusions drawn by the pleaders from the

facts.’” Ocello v. Koster, 354 S.W.3d 187, 197 (Mo. banc 2011) (quoting Westcott v. City of

Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990)). Moreover, this Court must affirm the circuit

court’s judgment if it is supported by any theory, “regardless of whether the reasons advanced

by the [circuit] court are wrong or not sufficient.” Rouner v. Wise, 446 S.W.3d 242, 249 (Mo.

banc 2014). This is because this Court is “primarily concerned with the correctness of the

[circuit] court’s result, not the route taken by the [circuit] court to reach that result.” Id.

 Discussion

 The plaintiffs raise seven claims of error. In the first three, they claim the circuit court

erred in granting judgment on the pleadings in the defendants’ favor because sections 72.418.2

and 321.322.3 are constitutionally invalid special laws in that they apply only to cities in

 4
St. Louis County and subject residents of those cities to a different set of statutes than

residents in similarly situated cities in other counties. In claims four, five, and six, the

plaintiffs aver the fee Crestwood must pay the fire district under section 72.418.2 is a

constitutionally invalid tax under the Missouri Constitution because it exceeds the tax rate

prescribed in article X, section 11 of the Missouri Constitution; it takes tax dollars from

Crestwood voters in violation of due process; and Crestwood voters suffer an increased tax

burden in violation of the Hancock Amendment. The plaintiffs’ final point claims the circuit

court erred in granting judgment on the pleadings because section 72.418.2 creates an

unfunded mandate in violation of the Hancock Amendment by requiring Crestwood to

undertake new financing of the fire district without an appropriation from the Missouri

General Assembly.

 I. The Challenged Statutes Are Supported by a Rational Basis

 The plaintiffs challenge sections 72.418.2 and 321.322.3 as constitutionally invalid

special laws. The circuit court held the plaintiffs could not prevail on their special laws

challenges because the challenged statutes created classifications based on open-ended

characteristics. After the circuit court entered its judgment, this Court decided City of Aurora

v. Spectra Communications Group, LLC, 592 S.W.3d 764 (Mo. banc 2019), and realigned the

test for a local or special law with the text of the Missouri Constitution and the Court’s

historical analysis of special laws by readopting rational basis review.

 Under City of Aurora, a law is special only if it does not apply equally to all members

of a given class and its disparate treatment of class members has no rational basis. Id. at 776.

“[E]very law is entitled to a presumption of constitutional validity in this Court, and if the line

 5
drawn by the legislature is supported by a rational basis, the law is not local or special and the

analysis ends.” Id. at 780. In other words, if there is a rational basis for a classification created

by the statute, the statute is not a special law. Id. Whether the statute excludes members of a

class based on open-ended or closed-ended characteristics is no longer relevant. Id. at 779.

 Even if a statute qualifies as a local or special law under article III, section 40 by

treating members of a given class differently without a rational basis for doing so, that does

not render it per se constitutionally invalid. The legislature may enact local or special laws

not prohibited by article III, section 40, so long as it complies with the notice and publication

requirements in article III, section 42. Id. at 776. To challenge a law as a constitutionally

invalid special law, therefore, a challenger must show not only that the law is special because

its classification scheme lacks a rational basis but also that the special law violates article III

because it either (1) violates the notice and publication requirements of article III, section 42,

or (2) violates any one of the specific prohibitions in article III, section 40, subsections (1)-

(30). See id.

 As noted above, the circuit court entered its judgment without the benefit of this

Court’s decision in City of Aurora. The circuit court’s reasoning (i.e., its focus on whether a

classification is based on open-ended or close-ended characteristics) is inconsistent with City

of Aurora. This Court, however, is primarily concerned with the correctness of the circuit

court’s result, regardless of how the circuit court arrived at that result. Rouner, 446 S.W.3d

at 249. This Court, therefore, will affirm the circuit court’s judgment if it is ultimately correct.

Id. Because this Court reviews the circuit court’s grant of judgment on the pleadings de novo,

this Court—consistent with City of Aurora—must determine whether the circuit court’s

 6
judgment is ultimately correct by considering whether the line drawn by the legislature is

supported by a rational basis with respect to each of the challenged statutes. See City of

Aurora, 592 S.W.3d at 780.

 “Under rational basis review, this Court will uphold a statute if it finds a reasonably

conceivable state of facts that provide a rational basis for the classifications.” Id. at 781

(quotations omitted). “Identifying a rational basis is an objective inquiry that does not require

unearthing the legislature’s subjective intent in making the classification.” Id. “Rational basis

review is highly deferential, and courts do not question the wisdom, social desirability or

economic policy underlying a statute.” Estate of Overbey v. Chad Franklin Nat’l Auto Sales

N., LLC, 361 S.W.3d 364, 378 (Mo. banc 2012) (internal quotations omitted) (quoting Comm.

for Educ. Equal. v. State, 294 S.W.3d 477, 491 (Mo. banc 2009)). “Instead, all that is required

is that this Court find a plausible reason for the classifications in question.” Id. (alteration

omitted).

 Section 72.418 sets forth a post-annexation procedure whereby a city choosing to

annex an unincorporated area served by a fire protection district must make annual payments

to the fire protection district in an amount equal to what the fire protection district would have

collected in tax revenue in the annexed area. Section 72.418.2. In return, the fire protection

district continues to serve the annexed area but no longer levies taxes in the annexed area

(with the exception of bonded indebtedness that existed prior to the annexation). Id. By virtue

of section 72.401.1, the application of section 72.418.2 is limited to cities within counties that

 7
have a charter form of government, 50 or more municipalities, and have adopted a boundary

commission—in effect, the plaintiffs allege, only cities within St. Louis County. 3

 Section 321.322 also sets forth post-annexation procedures. Its terms, however, differ

from section 72.418.2. Instead of mandating payment from an annexing city to a fire

protection district, section 321.322 provides, among other things, that the annexing city can

contract with the fire protection district to assume fire protection and emergency services in

the annexed area and purchase the fire protection district’s real and personal property in

exchange for a mutually agreeable payment to the fire protection district. Section 321.322.1.

After payment, the fire protection district must cease levying taxes in the annexed area. Id.

In short, section 321.322 allows annexing cities and fire protection districts to negotiate for a

mutually agreeable arrangement following annexation. The provisions of section 321.322,

however, “shall not apply” in any first-class county with a charter form of government and

more than 900,000 inhabitants. Section 321.322.3. The plaintiffs assert the classification

scheme in section 321.322.3 is drawn so narrowly that, in its practical effect, the statute

excludes only St. Louis County.

 The plaintiffs allege that, as a result of being excluded from section 321.322.3, cities

within St. Louis County cannot negotiate mutually agreeable arrangements to assume fire

3
 Section 72.401.1 provides that:

 If a commission has been established under sections 72.400 to 72.423 in any
 county with a charter form of government where fifty or more cities, towns and
 villages have been established, any boundary change within the county shall
 proceed solely and exclusively in the manner provided for by sections 72.400
 to 72.423, notwithstanding any statutory provisions to the contrary concerning
 such boundary changes.
 8
protection services following annexation of unincorporated areas. Instead, annexing cities

must pay to the relevant fire protection district the statutorily determined fee as required by

section 72.418.2, even though other similarly situated cities in other counties are not subject

to that fee and may negotiate with fire protection districts pursuant to section 321.322.1.

 The parties do not contest the language of the statutes or the manner in which they

operate. Nor do they contest that St. Louis County is currently the only county governed by

section 72.418.2 and excluded from section 321.322.1. Rather, they disagree only as to

whether the classification scheme in the challenged statutes is supported by a rational basis.

 On this point, in their amended petition, the plaintiffs alleged there is “no justification”

for treating cities in St. Louis County differently from other similarly situated cities in other

counties. The better practice is to plead expressly that a statute lacks a rational basis. The

plaintiffs, however, did not have the benefit of this Court’s decision in City of Aurora at the

time they filed their petition. And, in any case, this Court does not require magic language

but looks instead to the substance of a pleading to determine its nature and effect. See Latham

v. State, 554 S.W.3d 397, 405-06 (Mo. banc 2018). “Justification” is defined as a “lawful or

sufficient reason for one’s acts or omissions.” Justification, BLACK’S LAW DICTIONARY (11th

ed. 2019). By pleading the statutes have “no justification” whatsoever, the plaintiffs

sufficiently alleged the statutes lack a rational basis. 4

4
 Additionally, the plaintiffs stated in their amended petition, “There is no … rational basis
for the General Assembly’s failure to adopt a general law instead of this special law.” This
assertion conflates the threshold issue of whether a statute’s classification scheme lacks a
rational basis and is, therefore, special, with the secondary issue of whether the statute is
constitutionally invalid. This Court, nonetheless, notes the plaintiffs’ apparent attempt to
plead at the outset that the challenged statutes lack a rational basis.
 9
 After this Court decided City of Aurora, the parties also submitted supplemental

briefing further addressing whether the challenged statutes were supported by, or instead

lacked, a rational basis. The defendants assert the economic viability of fire protection

districts is subject to unique considerations in St. Louis County and constitutes a rational basis

for the challenged statutes given the county’s “scores of municipalities, [] unique annexation

history, and large unincorporated urbanized areas.” The plaintiffs reject that argument and

claim no rational basis exists for the scheme created by sections 72.418.2 and 321.322.3

because fire protection districts in St. Louis County already enjoy greater protection from

annexation under the boundary commission act, sections 72.400-72.430, because the act

makes annexation more difficult to complete. 5 As a result, the plaintiffs say, the tax bases

that support fire protection districts in St. Louis County already are adequately protected,

making the post-annexation restrictions imposed by section 72.418.2 “redundant.” In short,

5
 The plaintiffs point to the considerations required of the boundary commission before an
annexation may be approved. In particular, the plaintiffs cite section 72.403.3, which
provides:

 In reviewing any proposed boundary change, the commission shall approve
 such proposal if it finds that the boundary change will be in the best interest of
 the municipality or municipalities and unincorporated territories affected by the
 proposal and the areas of the county next to such proposed boundary. In making
 its determination, the commission shall consider the following factors:
 (1) The impact, including but not limited to the impact on the tax base or on the
 ability to raise revenue, of such proposal on:
 (a) The area subject to the proposed boundary change and its residents;
 (b) The existing municipality or municipalities, if any, proposing the
 boundary change and the residents thereof;
 (c) Adjoining areas not involved in the boundary change and the
 residents thereof; and
 (d) The entire geographic area of the county and its residents[.]

 10
the plaintiffs argue sections 72.418 and 321.322.3 provide an unnecessary layer of protection

for fire protection districts in St. Louis County. For this reason, the plaintiffs say, sections

72.418 and 321.322.3 lack a rational basis.

 The plaintiffs’ arguments are not persuasive because they challenge the wisdom of

sections 72.418 and 321.322.3. This Court does not question the wisdom of a statute. Estate

of Overbey, 361 S.W.3d at 378. Nor does this Court question the economic policy underlying

a statute. Id. Instead, this Court asks only whether there is “a plausible reason” for the

classification created by the statute. Id.

 Here, a plausible reason for limiting the application of section 72.418 to St. Louis

County is the unique risk of annexation that exists in St. Louis County, which in turn presents

a unique risk to the economic viability of fire protection districts levying taxes in areas subject

to annexation. St. Louis County is the most populous county in Missouri, and the plaintiffs

themselves acknowledge St. Louis County has “approximately 90 cities, towns, and villages.”

The greater the number of cities, the greater likelihood annexation may occur. 6 This is

particularly true given the large, unincorporated but urbanized area within St. Louis County.

Indeed, this Court has recognized that St. Louis County is unique because it “has a large

population, lacks a central city, has 90 separate municipalities within its borders, and has a

6
 Annexation within St. Louis County has been a uniquely controversial and much-discussed
issue for decades. See, e.g., Steven H. Goldberg, Annexations in Urban Counties: Missouri’s
Scheme and a Plan for Reform, 29 WASH. U. J. URB. & CONTEMP. L. 187, 213, 217 (1985)
(stating that “[a]ggressive competition for the rich commercial real estate lying in St. Louis
County’s unincorporated areas” had “sharpened the conflict between municipalities, the
county and the unincorporated areas targeted for annexation” and analyzing in particular “the
legislature’s response to the wave of annexations in St. Louis County” following changes in
the law).
 11
large, unincorporated area.” City of Chesterfield v. State, 590 S.W.3d 840, 844 (Mo. banc

2019). 7 All of these factors increase the likelihood of annexation within St. Louis County.

 Fire protection districts are empowered to levy taxes only within their territorial limits.

Section 321.230 (“For the purpose of providing revenue for such districts, the board shall

have the power and authority to order the levy and collection of ad valorem taxes on and

against all taxable tangible property within the district ….” (emphasis added)). When a city

annexes an unincorporated area within a fire district’s territorial limits, the fire district

potentially loses the benefit of tax revenue that would have been collected in the annexed

area. The legislature could have reasonably conceived that the post-annexation procedure

mandated by section 72.418 would dissuade opportunistic annexation of unincorporated

urbanized areas.

 Furthermore, the legislature could have reasonably conceived that, given the likelihood

of annexation in St. Louis County, the post-annexation procedure in section 72.418 would

protect the economic viability of fire protection districts serving unincorporated areas even in

the event of annexation. Specifically, the legislature could have reasonably conceived that

7
 In City of Chesterfield, this Court rejected a special-laws challenge to two countywide sales
tax laws. The first law provided that a first-class county with a charter form of government
and a population of 900,000 or more—i.e., St. Louis County—could adopt a countywide sales
tax by passing an ordinance. 590 S.W.3d at 842. The second law classified cities in St. Louis
County into two groups and set forth a procedure for distributing the countywide sales tax
between the groups. Id. at 842-43. In analyzing whether the challenged laws had a rational
basis, this Court noted specifically that St. Louis County is unique because it “has a large
population, lacks a central city, has 90 separate municipalities within its borders, and has a
large, unincorporated area.” Id. at 844. Based on these unique characteristics, the Court
concluded the distribution scheme in the challenged law had a rational basis because it
“serve[d] the state’s legitimate interest in providing stable revenue sources for [certain] cities
and discouraging opportunistic annexations.” Id. at 845.
 12
one way to cloak fire protection districts with post-annexation protection is to require that

they receive from an annexing city the same revenue they would have collected in taxes if

annexation had not occurred. The plaintiffs themselves admit the challenged classification

scheme “insulates the fire protection district from a loss in tax revenue resulting from

annexation.” This is a rational basis for the challenged classification.

 In short, the economic viability of fire protection districts in St. Louis County is a

plausible reason for the challenged classification in section 72.418.2. Likewise, there is a

plausible reason for the interrelated exclusion in section 321.322.3—without the exclusion,

section 72.418.2 would not apply to fire protection districts in St. Louis County and those fire

protection districts would not be guaranteed the same revenue they would have collected in

previously unincorporated areas.

 Because a reasonably conceivable set of facts provides a rational basis for the

classification scheme in sections 72.418.2 and 321.322.3, the plaintiffs’ special-law

challenges in Counts I, II, and III fail, and the defendants were entitled to judgment as a matter

of law on the face of the pleadings. The circuit court’s judgment, therefore, ultimately reached

the correct result with respect to these counts.

 II. Section 72.418.2 Does Not Impose a Tax on Crestwood Residents

 The plaintiffs’ next three claims of error challenge the annual fee Crestwood must pay

the fire district under section 72.418.2 as a constitutionally invalid tax that (1) exceeds the

municipal tax rate set by article X, section 11(b) of the Missouri Constitution; (2) violates

Crestwood residents’ due process rights under article I, section 10 of the Missouri

Constitution and amendment XIV, section 1 of the United States Constitution; and

 13
(3) increases the tax liability of Crestwood resident-taxpayers without voter approval in

violation of article X, sections 16 and 22 of the Missouri Constitution (provisions of the

“Hancock Amendment”). The circuit court found the fee Crestwood paid annually to the

district did not qualify as a tax and entered judgment on the pleadings for the defendants.

 The parties do not dispute the material facts related to these claims. Rather, they

dispute the legal conclusion to be drawn from the relevant facts. In particular, the plaintiffs’

claims of error are based on their allegation that the fee Crestwood must pay the district

pursuant to section 72.418.2 is effectively a tax on Crestwood resident-taxpayers. The label

attached to a charge imposed by the government—whether called a “tax” or something else—

does not determine whether it meets the legal criteria for a “tax.” See Zweig v. Metro. St.

Louis Sewer Dist., 412 S.W.3d 223, 244 (Mo. banc 2013); President Riverboat Casino-Mo.,

Inc. v. Mo. Gaming Comm’n, 13 S.W.3d 635, 638 (Mo. banc 2000); Beatty v. Metro. St. Louis

Sewer Dist., 867 S.W.2d 217, 221 (Mo. banc 1993). Rather, the Court must examine the

effect of the imposed contribution to determine whether it is a tax. See Zweig, 412 S.W.3d at

232.

 There is no perfect formula for determining whether a particular charge is a “tax.”

However, certain criteria are useful. For example, in distinguishing between a “tax” and a

“user fee,” this Court has indicated that, generally speaking, a charge is more likely to be a

“tax” if: (1) it is due to be paid on a periodic basis; (2) it is blanket-billed to all or almost all

residents of the relevant political subdivision; (3) it does not depend on the level of goods or

services provided; (4) it is imposed regardless of whether the government is providing a good

or service; (5) the government has historically and exclusively provided the good, service,

 14
permission, or activity for which the charge is imposed; and (6) if unpaid, it triggers a lien

against property. See, e.g., Keller v. Marion Cnty. Ambulance Dist., 820 S.W.2d 301, 305

n.10 (Mo. banc 1991); Arbor Inv. Co., LLC v. City of Hermann, 341 S.W.3d 673, 682-86 (Mo.

banc 2011).

 Here, it is not necessary to examine the nature of the fee paid to the district, however,

because the resident-taxpayers of Crestwood, which include Mr. Roby and Ms. Hoeing, do

not pay any charge to the district. Rather, pursuant to section 72.418.2, Crestwood—not its

residents—must pay an annual fee to the district. The fee imposed upon Crestwood is in an

amount equal to what the district would have levied (but following annexation cannot levy)

on the taxable property within the annexed area. Section 72.418.2. Section 72.418.2 does not

impose a financial obligation upon the resident-taxpayers of Crestwood, and no resident-

taxpayer pays money to the district. Accordingly, the fee imposed on Crestwood under

section 72.418.2 is not a tax on the resident-taxpayers of Crestwood.

 Section 72.418.2, therefore, does not violate article X, section 11(b), which

“addresses the amount of tax that a political subdivision may levy without voter approval.”

Green v. Lebanon R-III Sch. Dist., 13 S.W.3d 278, 284 (Mo. banc 2000). In relevant part,

article X, section 11(b) provides: “Any tax imposed upon such property by municipalities,

counties or school districts, for their respective purposes, shall not exceed the following

annual rates [without a vote, as specified in article X, section 11(c)]: For municipalities—one

dollar on the hundred dollars assessed valuation ….” The plaintiffs claim section 72.418.2

creates a “tax rate of $1.451763 per $100 of assessed valuation within the Annexed Area.”

 15
This claim fails, however, because the fee Crestwood paid to the district is not a tax on any

resident-taxpayer within the annexed area (or any other resident-taxpayer of Crestwood).

 Similarly, because the fee paid by Crestwood is not a tax on the resident-taxpayers of

Crestwood, the resident-taxpayers’ due process rights have not been violated. Article I,

section 10 of the Missouri Constitution provides that “no person shall be deprived of life,

liberty, or property without due process of law.” Amendment XIV, section 1 of the United

States Constitution similarly provides that no state shall “deprive any person of life, liberty,

or property, without due process of law.” The resident-taxpayers argue they are deprived of

property without due process of law because section 72.418.2 “simply mandates that Roby

and Hoeing make the payments demanded, in the amount set by the District” and the residents

cannot vote in the district’s election. But, as discussed above, section 72.418.2 does not

mandate that any resident pay an amount to the district. Rather, Crestwood resident-taxpayers

pay an ad valorem tax to Crestwood. Crestwood then uses a portion of that tax revenue to

pay the district’s fee.

 The resident-taxpayers further argue they are deprived of due process because they

“have no means to block the District from increasing the amount they must pay in taxes.”

But, again, the district does not levy taxes upon Crestwood residents. Moreover, Crestwood

resident-taxpayers do, in fact, have a means to ensure their municipal taxes (which are

imposed by Crestwood) are not increased. As discussed below, the Hancock Amendment

requires direct voter approval before a municipality or other political subdivision may

increase tax rates. Mo. Const. art. X, secs. 16, 22. The Crestwood resident-taxpayers’ rights

to due process have not been violated.

 16
 Furthermore, section 72.418.2’s fee does not violate article X, sections 16 or 22 of the

Hancock Amendment. 8 The Hancock Amendment, Mo. Const. art. X, sections 16-24, was

adopted in 1980. It “aspires to erect a comprehensive, constitutionally-rooted shield … to

protect taxpayers from government’s ability to increase the tax burden above that borne by

the taxpayers on November 4, 1980.” Fort Zumwalt Sch. Dist. v. State, 896 S.W.2d 918, 921

(Mo. banc 1995). In passing the Amendment, “the voters … guarantee[d] themselves the

right to approve increases in taxes proposed by political subdivisions of the state.” Beatty,

867 S.W.2d at 221. Article X, section 16 provides, in relevant part, “Property taxes and other

local taxes and state taxation and spending may not be increased above the limitations

specified herein without direct voter approval as provided by this constitution.” Mo. Const.

art. X, sec. 16.

 Section 22 provides, in relevant part:

 Counties and other political subdivisions are hereby prohibited from levying
 any tax, license or fees, not authorized by law, charter or self-enforcing
 provisions of the constitution when this section is adopted or from increasing
 the current levy of an existing tax, license or fees, above that current levy
 authorized by law or charter when this section is adopted without the approval
 of the required majority of the qualified voters of that county or other political
 subdivision voting thereon.

Mo. Const. art. X, sec. 22(a). 9

8
 Crestwood does not have standing to bring challenges under the Hancock Amendment. Mo.
Const. art. X, sec. 23; Fort Zumwalt, 896 S.W.2d at 921 (“The Hancock Amendment makes
no pretense of protecting one level of government from another.”); City of Hazelwood v.
Peterson, 48 S.W.3d 36, 40 (Mo. banc 2001) (“Hazelwood is without standing to sue under
the Hancock Amendment.”), abrogated on other grounds by Zweig, 412 S.W.3d at 248-49.
9
 “Other political subdivisions” include cities. Mo. Const. art. X, sec. 15.
 17
 What these provisions prohibit is an increase in taxes without direct voter approval.

Keller, 820 S.W.2d at 304. Whether labeled a “tax, license or fees,” if a charge operates as a

tax, it is subject to the Hancock Amendment and any increase must be directly approved by

the voters. Id.

 Here, however, neither Crestwood nor the district has levied a tax on Crestwood’s

resident-taxpayers because, under section 72.418.2, Crestwood resident-taxpayers simply are

not subject to a financial obligation. The plaintiffs, nonetheless, argue section 72.418.2

violates sections 16 and 22 because resident-taxpayers such as Mr. Roby and Ms. Hoeing

“suffer an increased tax burden … in that a tax increase by the Affton Fire Protection District

necessarily increases taxes on resident-taxpayers of Crestwood due to the operation of §

72.418.” This argument rings hollow. The district’s tax rate does not “necessarily” increase

taxes on Crestwood resident-taxpayers because Crestwood cannot tax its citizens at a higher

rate unless the voters directly approve a tax rate increase, as that is precisely what the Hancock

Amendment was enacted to require. Beatty, 867 S.W.2d at 221.

 Reduced to its essence, the resident-taxpayers’ real complaint is that they do not think

Crestwood should have to pay the district a higher fee under section 72.418.2 just because the

district increases its own tax rates. The resident-taxpayers argue they are harmed because the

money Crestwood pays to the fire district could be used by Crestwood to benefit Crestwood

residents more directly. The ways in which Crestwood must spend its tax revenue under

section 72.418.2, however, is not equivalent to the imposition of a tax. “Changing the

distribution of revenue is not the ‘levying’ of a new tax requiring voter approval.” Berry v.

 18
State, 908 S.W.2d 682, 685 (Mo. banc 1995) (rejecting a claim under the Hancock

Amendment).

 Section 72.418.2 does not impose a tax on Crestwood’s resident-taxpayers. Moreover,

the tax burden on Crestwood resident-taxpayers is not increased as a function of section

72.418.2. Section 72.418.2, therefore, does not violate article X, section 16 or 22 and, on the

face of the pleadings, the defendants were entitled to judgment as a matter of law.

 III. Section 72.418.2 Does Not Create an Unfunded Mandate

 The plaintiffs’ final claim of error contends the circuit court erred in granting the

defendants judgment on the pleadings on the plaintiffs’ claim that section 72.418.2 creates an

unfunded mandate in violation of the Hancock Amendment, article X, sections 16 and 21 of

the Missouri Constitution. Section 16 provides, in relevant part, “The state is prohibited from

requiring any new or expanded activities by counties and other political subdivisions without

full state financing, or from shifting the tax burden to counties and political subdivisions.”

Section 21 provides, in relevant part:

 A new activity or service or an increase in the level of any activity or service
 beyond that required by existing law shall not be required by the general
 assembly or any state agency of counties or other political subdivisions, unless
 a state appropriation is made and disbursed to pay the county or other political
 subdivision for any increased costs.

Mo. Const. art. X, sec. 21.

 Again, the parties do not dispute the facts relevant to this claim. Rather, the plaintiffs

urge this Court to accept the legal conclusion that section 72.418.2 requires Crestwood to

undertake a new and increased level of activity “by financing the operations of the District in

providing fire protection services in an adjacent political subdivision.” This Court rejects the

 19
plaintiffs’ legal conclusion. Crestwood voluntarily annexed the unincorporated area within

the district. No statute required it to do so. Section 72.418.2 merely delineates the obligations

that arise if a city chooses to annex an area within a fire protection district’s territorial limit.

 In City of Jefferson v. Missouri Department of Natural Resources, 863 S.W.2d 844,

848 (Mo. banc 1993), certain municipalities argued the legislature created an unfunded

mandate by passing a law that allegedly required them to join and finance a solid waste

management district. This Court rejected the claim, concluding the statute in question was

“permissive and allow[ed] cities to join such districts if they [chose] to do so.” Id. The statute,

therefore, did not create an unfunded mandate. Id. Similarly, here, section 72.418.2 does not

require any city to annex an area within a fire protection district and thereby enter into the

statutory arrangement of which Crestwood complains. Whether to annex a certain area is a

matter left entirely to the municipality and other relevant governing bodies. It is not an

obligation imposed by the state.

 Moreover, “the Hancock Amendment’s aim is to prohibit burden-shifting from the

State to a local entity.” Breitenfeld v. Sch. Dist. of Clayton, 399 S.W.3d 816, 831 (Mo. banc

2013). It does not come into play when a statute “merely shifts the responsibility for an

existing activity or service among local political subdivisions.” Id. “Local-to-local shifting

of responsibilities” does not offend the Hancock Amendment “because the amendment is not

intended to be applied to prevent a statute’s reallocation of responsibilities among political

subdivisions.” Id. Here, section 72.418.2 does not shift responsibility for financing fire

protection services from the state to a local political subdivision. Rather, following

Crestwood’s voluntary annexation of the unincorporated area adjacent to it, section 72.418.2

 20
merely shifts the financial responsibility for financing fire protection services in the annexed

area from one local political subdivision (the fire district) to another (Crestwood). This local-

to-local shifting does not offend the Hancock Amendment.

 Section 72.418.2 does not create an unfunded mandate in violation of article X,

sections 16 or 21 of the Missouri Constitution. The defendants were entitled to judgment as

a matter of law on the face of the pleadings.

 Conclusion

 Treating the petition’s well-pleaded facts as true, it is evident from the face of the

pleadings that a rational basis supports the classification scheme in sections 72.418 and

321.322.3, the fee Crestwood pays to the district is not a tax on the resident-taxpayers of

Crestwood, and section 72.418.2 does not create an unfunded mandate. Therefore, the

defendants were entitled to judgment as a matter of law.

 The circuit court’s judgment is affirmed.

 ___________________________________
 PATRICIA BRECKENRIDGE, JUDGE

Draper, C.J., Wilson, Russell,
Powell and Fischer, JJ., concur.

 21